The People of the State of New York, Respondent,
*v.* Joseph Weiseman, Appellant.

Argued April 21, 1939; decided May 23, 1939.

*Bernard L. Shapiro* for appellant. The People failed to establish the commission of any crime by the defendant. (*People* v. *Ledwon,* 153 N. Y. 10; *People* v. *Nicosia,* 164 Misc. Rep. 152; *People* v. *Clark,* 242 N. Y. 313; *People* v. *Werner,* 174 N. Y. 132; *People* v. *West,* 106 N. Y. 293;

People v. *Atwater*, 191 App. Div. 345; *People* v. *D'Antonio*, 150 App. Div. 109; *United States* v. *Balint*, 258 U. S. 250; *Mills* v. *State*, 41 Tex. Cr. Rep. 447; *Porter* v. *State*, 34 Tex. Cr. Rep. 364; *Barrow* v. *Owen*, 89 Fed. Rep. [2d] 476; *People* v. *Harris*, 136 N. Y. 423; *Lamb* v. *Union Ry. Co.*, 195 N. Y. 260; *United States* v. *Ross*, 92 U. S. 281; *United States* v. *Buchalter*, 88 Fed. Rep. [2d] 625; *People* v. *Sowma*, 252 App. Div. 413.) The request to charge that, if the defendant was called out of the detention pen and was told that he was discharged he had a right to leave, was erroneously denied. (*People* v. *Murphy*, 20 Pac. Rep. [2d] 63; *Matter of Eley*, 130 Pac. Rep. 821.)

*Thomas E. Dewey*, District Attorney (*Stanley H. Fuid* and *Whitman Knapp* for respondent. The People's evidence established that the defendant, being in lawful custody, departed therefrom without permission from any one in authority. (*People* v. *Pesky*, 254 N. Y. 373; *People* v. *McCarthy*, 250 N. Y. 358; *People* v. *Malkin*, 250 N. Y. 185; *People* v. *Shattuck*, 194 N. Y. 424.) The evidence supports the jury's finding of a criminal intent. (*Riley* v. *State*, 16 Conn. 47; *Wiggins* v. *State*, 194 Ind. 118; *State* v. *McInerney*, 53 R. I. 203; *State* v. *Clark*, 32 Nev. 145.) The court's charge was correct and the additional request was properly denied. (*State* v. *Doud*, 7 Conn. 384; *Riley* v. *State*, 16 Conn. 47; *State* v. *McInerney*, 53 R. I. 203; *Johnson* v. *State*, 122 Ga. 172; *State* v. *Wright*, 81 Vt. 281.)

CRANE, Ch. J. The defendant was arrested on May 24, 1935, charged by a woman with the commission of a serious offense. He was taken to the police station and locked up. Later he was free, at liberty. Arrested three years later, he has been indicted for the " crime of prisoner escaping as a felony." The defendant says he was discharged. The jury having convicted the defendant, sentence was suspended by the trial judge. The Appellate Division affirmed the conviction, two of the justices dissenting and voting to reverse and dismiss the indictment. The defendant has appealed here, claiming: (1) That he has not been proved guilty beyond a reasonable doubt or that the evidence

is insufficient to establish his guilt; (2) that there was error committed on the trial. We have this peculiar circumstance: That the prisoner was locked in the pen in the Magistrate's Court there is no doubt; that he came out later is also beyond dispute. According to the testimony introduced by the People, it was impossible for the defendant to get out, and according to the logic of the testimony he never escaped. The defendant says that he was ordered out and discharged by a person apparently in authority.

Officer Walsh took the defendant, upon arrest, to the Fourth District Magistrate's Court at 153 East Fifty-seventh street and placed him in the detention pen. The defendant's name was entered in the pen book at one-ten P. M. When the officer came back at three-ten P. M. the prisoner was gone. In the ledger or record there is the entry of the time the defendant was signed in. There is no entry for " time out."

Stephen A. Darcy was the officer in charge of the pen. He testifies that it was Detective Fater who came to get the prisoner, but the prisoner was not there. Darcy was at the door of the pen until half-past one, when he went to lunch and came back at two o'clock. In his absence Officer Creen was in attendance. At one-fifty-five Officer Devine brought in nine prisoners and signed them out at two-thirty-five.

" Q. When you left to go to lunch, was Weiseman still there? A. Yes, sir, your Honor, he was.

" Q. At 2.35, when Devine took out these prisoners, can you tell from this record whether he took them all out at the same time? A. I was there at the time and gave them to him. He only took nine out, because he took eight and he put them around in a small place at the side of the pen and counted them, and then he had to go back and pick a man off the floor, a prisoner off the floor that had been sleeping off his intoxication, had been intoxicated; and I stood at the gate with the key in the lock while he was picking him off the floor, and brought him out, and I locked the gate again; immediately Fater came for his prisoner and I called his name up to sign on the book, and he was

not in there; so, of course, Fater, of course, didn't sign the book then."

The names of the nine prisoners were called off.

" Q. Did Devine sign up for the prisoners he took out? A. He did, your Honor."

Darcy further testifies that he counted these prisoners as they went out. We have it positively stated by Darcy that the defendant did not go out while he was there.

" Q. You know the man didn't go out while you were there? A. I know the man didn't go out while I was there."

In other words, Darcy says the man was in the cell and that the only men who went out with Devine were the nine men he put in, for they were counted and called by name, being lined up against the wall. This leaves the half hour that Creen was there, and he testified as follows:

" Q. During the time while you were in charge of the detention pen, did any police officer come and take out a prisoner by the name of Joseph Weiseman? A. No, sir. Q. Did you see this defendant Joseph Weiseman in the pen, the detention pen, that day? A. I did. Q. You never let him out of the pen, either? A. No."

The other officer is Edwin Devine. He says that he told Darcy that he had come to take out his prisoners. " I signed the prisoners out and I called the prisoners by name. I had eight prisoners who came out. One prisoner, the man who was charged with intoxication, unable to take care of himself, was lying on the floor of the pen. I went into the pen and woke him up and brought him out."

All the prisoners were lined up before the magistrate, their names were called and sentence was passed upon them all.

" Q. But you are positive that every name of your prisoners was called out in court that day before the Magistrate? A. That is right." The witness admits that he did not put all nine names in the book, but just signed " George Doherty and eight others," that is, nine prisoners.

Now the point I am making is this: The witnesses for the People say that Weiseman, the defendant, was put in

the pen and locked in. Darcy did not let him out, neither did Creen. These were the two men in charge of the gate. They swore positively he did not come out, and they also testify that he was not among the nine that Officer Devine took out. The People offer no explanation whatever, so far as the testimony shows, of the manner of Weiseman's release. He, when he takes the stand, offers the only explanation. Weiseman was a shoe representative of Dr. Locke, of Williamsburg, Ontario, and had been for six years. He is a graduate of a college in Iowa, University of Iowa, and for a while attended Yale University. He says that he now has a shoe store in Los Angeles. His story is short and to the point.

" I was placed in this detention pen and I was there for some time amongst a lot of people, with bootblack boxes and candy boxes and various other peddler accessories and who I took to be peddlers, and I was in this detention pen approximately 15 or 20 minutes, when someone in uniform opened the door and said, ' Come on, all out.' It was the elderly gentleman, Stephen Darcy. I didn't know what to do, so I just followed the prisoners, or the people that I was with and even then I was confused and I had some candy in my hand which I bought from one of the peddlers who was with me, and the court attendant said, ' Half of you men go in front of the Magistrate,' and I started to go in that gate there in back of the other peddlers and the attendant said, ' No, you stay here,' which I did.

" I was in that anteroom about fifteen, at least fifteen minutes, standing there, when someone said for me to go in front of the Magistrate, which I did, with the other peddlers, and when I did that, I was standing there and didn't know what it was all about and someone said, ' What are you standing here for — you are discharged.' And knowing that the complaint was false and I had nothing at all to do with it, I went home."

The People's case is made up on the inference that Weiseman must have slipped out when Devine took out his nine prisoners. This might have been a fair inference if it were not for the fact that these same People's witnesses contra-

dict it. Devine said he had his nine prisoners all by name. They were the nine he signed in and the nine who were signed out and both Darcy and Creen say the defendant did not leave the cell. Under these circumstances and this proof we do not see how the defendant's guilt has been proved beyond a reasonable doubt.

The court was asked to charge as follows:

" Mr. Murray: I ask your Honor to charge the jury that this defendant was not obliged to know the procedure through which persons are detained and discharged in Magistrates' Courts.

" The Court: He had no legal obligation to familiarize himself with any legal procedure that I know of; but the question for the jury to decide is whether he, a man of his background, intelligence, and education, under all the circumstances, did have knowledge that he was not being legally discharged." To this an exception was taken.

If the magistrate discharged the prisoner and told him he could go it was not for the prisoner to pass upon the legality of the magistrate's acts. If he knew that the judge or officials had mistaken him for one of Devine's prisoners, then he would be guilty of the crime charged, or an escape, but he was not to be charged with an escape because he may have known or doubted the legality of the proceedings otherwise. He was there to answer to the charge made against him, not to instruct the officials in their duty; and, in fact, the District Attorney does not claim it. If, on the other hand, the defendant had deceived the officers or had led them to think that he was some other person, he would have had knowledge of such illegality as to make the judge's statements correct. As made, they were too broad, a matter not in itself calling for reversal except in view of the circumstances of this case.

The judgments should be reversed and the indictment dismissed.

LEHMAN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur; O'BRIEN, J., taking no part.

Judgments reversed, etc.