Clarence O. RIVERS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 20828.

United States Court of Appeals
Ninth Circuit.

Oct. 21, 1966.

Frederick Barak, Hollywood, Cal., for appellant.

Manuel L. Real, U. S. Atty., John K. Van De Kamp, Asst. U. S. Atty., Chief, Crim. Div., Robert L. Brosio, Asst. U. S. Atty., Asst. Chief, Crim. Div., William J. Gargaro, Jr., Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES, DUNIWAY and ELY, Circuit Judges.

BARNES, Circuit Judge:

Appellant, twice previously convicted of Dyer Act violations, left the Los Angeles County Jail on September 24, 1965, between 7:00 and 8:00 a. m., after serving thirty days for drunk driving. He sold a pint of blood for $4.00, and by 9:00 or 9:30 a. m. bought wine, vodka

and Seven-Up which he proceeded to consume, but ate nothing for breakfast. He allegedly remembers nothing else.

At about 12:50 p. m., on September 24th, 1965, appellant stepped into a motor vehicle, *i. e.*, a truck owned by Los Angeles-Seattle Motor Express, with the motor running, standing outside the premises of Zipp Extract Company in Los Angeles. The truck was slowly driven away by appellant. The truck contained goods in interstate shipment. (18 U.S.C. § 659.)

The truck driver, who had been telephoning, chased his truck on foot, caught up to it, opened the door, grabbed the steering wheel and turned the wheels into the curb. The appellant struck the truck driver and attempted to push him out of the cab. The appellant was pulled out of the truck and physically held on the sidewalk until police arrived. Appellant's defense was that he was drunk.

There was no question but that appellant had been drinking. However, he was able to stand, and walk, and his speech was "distinct." He got into the police car unassisted. His eyes were blood-shot, he staggered and had alcohol odor on his breath. He was described as "not drunk" by one police officer; and as "unable to drive an automobile" by another.

Whether he was so drunk he could have no intent was a question of fact determinable by the trier of fact.

The jury was instructed it was required to find an "intent" on the part of appellant to take the goods shipped in interstate commerce. To show this intent, the people relied on certain facts:

(1) That appellant asked his captors to let him go.

(2) That appellant pleaded with the police to be released.

(3) That appellant twice struck the truck driver Roybal.

(4) That appellant did not stop when asked to.

(5) That appellant gave an explanation as to why he was taking the truck

(he said he needed money to pay a furniture bill).

Thus a question of fact was presented to the jury, and it decided by its verdict appellant was not so drunk as not to have the intent to take the truck and its goods.

Appellant charges three errors:

I. The giving of Cal.Jur. Instruction No. 78 on "voluntary intoxication" (which leaves out the issue of specific intent to steal (cf. Cal.Jur. 78(B)), and the refusal to give instruction § 10.16, Mathes and Devitt: Fed. Jury Practice and Instructions.

II. The refusal of instructions (defendant's numbers 1 and 2) relating to effect on intoxication of a previous giving of blood.

III. The failure of police officers to give drunk tests.

I.

The appellant charges that "giving of Instruction No. 78 from Cal.Jur." was error.

Our rules provide:

"When the error alleged is to the charge of the court, the specification shall set out the part referred to *in totidem verbis*, whether it be in instructions given or in instructions refused, together with the grounds of the objections urged at the trial." (Rule 18 2(d).)

Nowhere in appellant's brief are the instructions given set out or are those instructions refused set out. We could well refuse to entertain further this point, but only appellant would then suffer.

Nor does appellant anywhere set out in his opening or closing brief, by reference to transcript pages, much less lines, the instructions objected to.

We have, nevertheless, searched the transcript to find Cal.Jur. Instruction 78 in the Reporter's Transcript, and find it on page 113, lines 3 to 21.

If that instruction, alone, had been given, appellant might have had reason

to object. But the court gave other and further instructions re specific intent, as follows:

"In every crime (and in this one) there must exist a union or joint operation of act and intent.

"The burden is always upon the prosecution to prove both act and intent beyond a reasonable doubt.

"With respect to crimes such as charged in this case, specific intent must be proved before there can be a conviction.

"Specific intent, as the term itself suggests, requires more than a mere general intent to engage in certain conduct.

"A person who knowingly does an act which the law forbids, or knowingly fails to do an act which the law requires, intending with evil motive or bad purpose either to disobey or to disregard the law, may be found to act with specific intent.

"While witnesses may see and hear and thus be able to give direct evidence of what a defendant does or fails to do, there can be no eye-witness account of the state of mind with which the acts were done or omitted.

"Thus intent can be proved by circumstantial evidence and, indeed, it can rarely be established by any other means." (R.T. pp. 109–110.)

While Cal.Jur. Instruction No. 78–B combines in one instruction the problem of specific intent and voluntary intoxication, they need not necessarily be combined.

Appellant relies on two California cases: People v. Garcia, 169 Cal.App.2d 368, 337 P.2d 100, and People v. Gorshen, 51 Cal.2d 716, 336 P.2d 492. In *Garcia,* a robbery case requiring a specific intent to steal, the trial court refused to give, as requested, Cal.Jur. Instruction No. 78–B, and "[t]*he instructions which the court did give omitted the element of specific intent* to steal and omitted entirely the subject matter of the second sentence of section 22 of the [California] Penal Code." (Emphasis added.)

The second sentence of Section 22 of the California Penal Code reads:

"Whenever 'the actual existence of any particular * * * intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the * * * intent with which he committed the act.' " (337 P.2d at 102.)

The trial judge here used almost the precise language stated essential in *Garcia* (R.T. p. 113).

*Gorshen,* supra, holds a specific intent to kill is an essential element of murder, and adds nothing to an understanding of this case.

▉ We find the court did instruct on all essential elements of the case, including those mentioned in Mathes § 10.16, i. e., specific intent and effect of voluntary intoxication.

▉ If proper and adequate instructions are given, defendant has no right to have his choice of language used in the way he prefers it. Tucker v. United States, 151 U.S. 164, 170, 14 S.Ct. 299, 38 L.Ed. 112 (1893).

II.

Here the appellant proposed two instructions:

*Defendant's Special Instruction Number One.*

"Although loss of blood from a voluntary donation to a blood bank is not a defense, the fact that a person may have suffered after effects from the loss of blood at the time of a commission of a crime may negative the existence of requisite criminal intent.

"So, evidence that a defendant acted or failed to act while suffering after effects from the loss of blood is to be considered in determining whether or not the defendant acted or failed to act with specific intent as charged.

"And if it appears that the accused was suffering from the after effects from the loss of blood in such a degree

that his mind was incapable of forming the specific intent required by law to commit the offense charged, the jury should acquit him." (C.T. p. 14.)

*Defendant's Special Instruction Number Two.*

"Evidence that the defendant had after effects from the loss of blood due to a voluntary donation of blood coupled with state of intoxication the defendant was in is to be considered in determining whether the defendant acted while in such a state that his mind was incapable of forming the specific intent required by law to commit the offense charged.

"If it should appear that the accused mind was in such a state of consciousness that his mind was incapable of forming the specific intent required by law to commit the offense charged, then the jury should acquit him." (C.T. p. 15.)

As the government aptly points out, these instructions relate to facts, not to law.

No expert testimony was offered by appellant as to the effect, if any, of the taking of blood. A continuance to produce such expert evidence was asked for in the middle of the trial. No abuse of discretion existed when the trial judge refused such a continuance, requested at that late date, as untimely. The issue of fact was presented to the jury, argued to it, and decided by the jury adversely to appellant.

### III.

Appellant cites no authority in support of his third alleged error. We know of no law or rule that *requires* such tests, or any tests, for intoxication, if any exist which are acceptable in evidence. Nor have we been directed to any factual support in the record for the position that appellant ever asked for sobriety tests.

We find no error in any of the three points urged; and affirm.