### State of Vermont v. David Lakin

[300 A.2d 554]

No. 194-71

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed February 6, 1973

*Dale O. Gray,* State's Attorney, and *Arthur H. Johnson,* Deputy State's Attorney, on the brief, for the State.

*Robert A. Gensburg, Esq.,* St. Johnsbury, for Defendant.

**Smith, J.** The defendant was tried by jury in the District Court of Vermont, Unit No. 4, Caledonia Circuit, on November 30, 1971, and December 1, 1971, on a charge of attempted escape from the St. Johnsbury Regional Correctional Center. The jury returned a verdict of guilty and judgment was entered on the verdict. The appeal of the defendant to this Court is based upon alleged improper exclusions by the trial court of evidence offered by the defendant, as well as to certain exceptions to the instructions given by the lower court to the jury.

The factual situation presented here is, to say the least, unusual. The defendant, David Lakin, was serving a prison term at the St. Johnsbury Regional Correctional Center, in which he was lawfully confined. On the date of the claimed offense, the defendant was confined in what is known as the "House Section" of the Center. This is the minimum security section of the Center and considerable latitude is given to the inmates of such section in their confinement and conduct. For example, the inmates of this "House Section" are allowed to visit in the Village of St. Johnsbury from 6 P.M. until 10 P.M. when permission is received in the form of a furlough issued by the Superintendent of the Correctional Center. By reason of such a furlough the defendant was allowed to visit St. Johnsbury Village on October 15, 1971, and he returned to the Center at the designated time on that evening. A house check at 11 P.M. by Officer Brown of the institution found the defendant to be in the house at that hour.

However, about one-half hour later, when Officer Brown went outside the building to check the exterior of the Center, he saw a person running in the parking lot that appeared to be David Lakin. Brown instructed White, another Custodian Officer, to then make a house check of the building and White did not find Lakin to be in the building. A little later in the evening, Officer Brown went inside to make an additional check for Lakin inside the building while Officer White went outside the building to make further observations. At that time, he saw a person approaching the Correctional Center that he recognized as Lakin and called to him. The person, to whom Officer White called, ran up a set of stairs of

a building on the side of the street opposite the Correctional Center and vanished from view.

Officer Brown then went out of doors to see if he could observe Lakin. He looked up, and saw a person going through a window into the House Section from the roof of the Correctional Center. Shortly thereafter, Mr. Lakin was found inside the Correctional Center, clad in a bathrobe, in a bathroom.

In addition to these facts, agreed upon between the State and the defendant, it is also agreed that there is no evidence that the defendant intended at any time to flee the Correctional Center on a permanent basis, and that the jury could have found that, even though the defendant was outside the Correctional Center without permission, he intended to return to such Center promptly. In fact, all the evidence in the case is that if the defendant did leave the Center without permission, he certainly returned promptly to the Center, even if such return was made otherwise than by the front door, being through an opened window.

Under the information and warrant, the defendant was charged with:

> ". . . being lawfully confined to the St. Johnsbury Regional Correctional Center, a penal institution, and while in lawful custody of that institution attempted to escape from that institution, contrary to the form of the statute, in such case made and provided, and against the peace and dignity of the State."

The first point raised by the defendant in his brief, and which is the basis for his briefed objections to both the claimed wrongful exclusion of offered evidence in his defense, as well as to the charge of the court, involves the matter of intent. What the defendant is saying is that there was no intent upon the part of the defendant to flee the Correctional Center, or to evade the due course of justice.

The evidence which the defendant sought to introduce in the case was testimony of the defendant as well as of Officer White. The offer of the defendant was that such evidence would establish that there had been numerous instances in the past when the other inmates of the Correctional Center, without permission, had left the Center for a short time, had

returned, and that such temporary absences were not considered as escapes, or attempts to escape, by the officials in charge of the Center, nor was any prosecution ever instituted by reason of such temporary absences from the Center. Further, that this policy of the Center was well known to all the inmates thereof, including this defendant.

The defendant requested the lower court to instruct the jury that before it could find the defendant guilty of the offense with which he was charged that the jury must find beyond a reasonable doubt, the defendant attempted to evade the due course of justice.

"The offense of an attempt to escape from lawful confinement is committed when an act is done with intent to gain release from custody and the performance of that act is part of a series of events which would lead to the intended result, if not interrupted." *State* v. *Morse,* 130 Vt. 92, 94, 286 A.2d 286, 287 (1971).

"This rule of law is in keeping with the statute relating to attempted offenses, generally. 13 V.S.A. § 9." *State* v. *Morse, supra.*

"An attempt to escape is such effort on the part of the prisoner to depart from lawful custody before discharge by due process of law as would, if not extraneously interrupted, end in the consummation of an escape." 30A C.J.S. *Escape* § 8, at 886.

"The prisoner ordinarily is not guilty of the crime of escape unless he departs from lawful custody with intent to evade the due course of justice." 30A C.J.S. *Escape* § 6, at 885.

Under the particular and peculiar circumstances of the case at hand, we hold that the lower court was in error in refusing to admit the offered evidence of the defendant on the customs and acts of the correctional official in regard to the temporary absence of a prisoner, without leave, to bring back to that institution alcoholic beverages, or other merchandise. The evidence is clear that confinement in the Correctional Center was not of that rigid variety which is customary in more strictly controlled penal institutions. If the offered

86

evidence substantiated the defendant's claim that a temporary, unauthorized absence from the Correctional Center, followed by an immediate return to that facility, was not regarded as an escape, or attempt to escape, by the correctional authorities, such evidence could become very material on the intent of the defendant. If such were the facts, and such facts were known to the inmates at the Correctional Center, then a jury might well have found that no intent to escape existed in the mind of the defendant by his temporary departure from the confines of the Center, followed by a quick and voluntary return. The defendant should have been permitted to offer evidence on an absence of intent on his part to attempt, or effectuate, an escape. The failure of the trial court to allow the offered evidence, requested by the defendant, was in error.

Because this cause must be reversed and remanded for a new trial, which may well present a new factual situation for the consideration of the jury, resulting in the need for instructions to the jury which may differ from those given in the trial below, there is no necessity for us to consider exceptions here briefed by the defendant to the charge previously given.

*Reversed and remanded.*