**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joe Charles NIX, Defendant-Appellant.**

**No. 73–1449.**

United States Court of Appeals,
Seventh Circuit.

Argued April 15, 1974.

Decided Aug. 8, 1974.

Leslie G. Foschio and John A. Lancaster, Senior Law Student, Notre Dame, Ind., for defendant-appellant.

Henry A. Schwarz, U. S. Atty., Jack Strellis, Asst. U. S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Before CUMMINGS, PELL and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

This appeal concerns the effect of a defendant's intoxication on a prosecution for escape or attempted escape.

Defendant Nix was confined in the United States Penitentiary at Marion, Illinois. On May 9, 1972, Nix was excused from working because of illness and was "deadlocked" in his cell during the day. On the following day, he again asked to be locked in his cell so other inmates would not disturb him. The guard conducting the count of prisoners in their cells noticed Nix' bunk was occupied at the 4 p.m., 7 p.m. and 10 p.m. counts. When a new guard began his shift at the midnight count, however, he discovered the occupant of Nix' bunk was a dummy.

After a 45-minute search, officers found Nix locked in the rear of a trailer truck parked on a lot outside the prison walls. The trailer had been loaded with desks during the day and was moved outside to the parking lot shortly after 10 p.m.

Nix was indicted under 18 U.S.C. § 751(a) [1] for "unlawfully and wilfully attempt[ing] to escape."

---

[1] "Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both. . . ."

At the trial several inmates testified they had seen Nix either before his disappearance or after his capture. They described him as "roaring drunk," "drunk as hell" or noted particular behavior that led them to believe Nix was intoxicated.

The following instructions were given:

Three essential elements are required to be proved in order to establish the offense charged in the indictment:

First, the defendant had been in custody of any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge or magistrate.

Second, the defendant escaped or attempted to escape.

Third, the escape is from a confinement based upon the conviction.

Defendant has offered evidence that he was intoxicated at the time of the commission of the crime charged in the indictment. The crime does not involve specific intent. Therefore, the evidence that defendant acted or failed to act because of intoxication does not constitute a defense.

Nix' attorney objected to the first instruction because it did not include "some standard of mental state" in the definition of escape. He objected to the second instruction on the ground that every "attempt" crime requires specific intent which may be negated by intoxication. The court overruled the objec-

tions without explanation. Nix was convicted and sentenced to five years' imprisonment, to run consecutive to his present sentence.

On the day after Nix' appeal was argued, a different panel of this court heard the appeal of Samuel Peterson, No. 74–1074. Peterson had been drinking heavily throughout the day of May 27, 1973, at the honor camp at Marion. So intoxicated that he vomited, Peterson then took a towel and some toiletries to clean up. On his way to the lavatory, he again felt ill and wandered outside to rest against a tree. Peterson testified that the next thing he remembered was walking along some railroad tracks the next morning, trying to get back to the camp. He was apprehended about eight miles from Marion, the towel and toiletries still in his possession.

Peterson was also indicted under § 751, but charged with escape rather than attempted escape. He was tried before the same district judge, who gave virtually the same instructions as in the Nix trial. Peterson's lawyer objected on the theory that escape is a specific-intent crime to which intoxication is a defense. Peterson was convicted and sentenced to only one year, consecutive to his present sentence.

Both defendants urge this court to employ the traditional analysis of specific intent versus general intent.[2] Nix argues, with substantial support,[3] that all crimes of attempt are classified as specific-intent crimes. Peterson claims, with somewhat less authority,[4] that the specific-intent label should be applied to escape as well as to attempted escape. If either crime requires specific intent,

---

2. "Specific intent, as the term itself suggests, requires more than a mere general intent to engage in certain conduct. A person who knowingly does an act which the law forbids, or knowingly fails to do an act which the law requires, intending with evil motive or bad purpose either to disobey or to disregard the law, may be found to act with specific intent." Part of instruction approved in Rivers v. United States, 368 F. 2d 362, 364 (9th Cir. 1966).

3. "The necessity of proving a specific intent as one of the specific requirements for the crime of attempt is illustrated by the fact that if intoxication is sufficiently great to prevent a defendant's entertaining a specific intent, he cannot be convicted for an attempt." 41 Harv.L.Rev. 821, 841 n. 72 (1928).

4. People v. Dolatowski, 94 Ill.App.2d 434, 237 N.E.2d 553 (1968) ; Gallegos v. People, 159 Colo. 379, 411 P.2d 956 (1966).

defendants argue, then the jury should have been allowed to consider whether the prisoner was so intoxicated he could not form the requisite intent.

Under the traditional analysis, specific intent is indeed required for attempted escape. We could end the inquiry here and remand this case because the instruction given erroneously states the law. Simplistic as the traditional analysis is, however, it does not further a logical resolution of the problem. This is true for several reasons.

Implicit in Nix' argument is an acknowledgement that escape is a general-intent crime.[5] Nix would say that, by choosing to charge him with *attempted* escape, the prosecutor injected the element of specific intent into the case. Therefore intoxication would be relevant in his case but not in Peterson's.

The trouble with this approach is the impossibility of drawing a line between escape and attempted escape. Was the difference between Nix' act and Peterson's the eight miles Peterson traveled? Or an overnight absence versus the hours Nix was missing? Any escapee brought to trial was ultimately unsuccessful.

> On reflection it will be seen that in cases arising under this statute [§ 751] the line of demarcation between an escape and an attempt to escape is often too shadowy to permit of the laying down of absolutes.[6]

We believe the distinction between the two crimes is too flimsy to support a rule of law that would attach great importance to the prosecutor's choice between a charge of escape and one of attempted escape.

This deficiency in the traditional analysis might be overcome by labeling both crimes as general-intent crimes, as the district judge did, or as specific-intent crimes, as Peterson urges. These labels are "often used in the cases but seldom defined." United States v. Williams, 332 F.Supp. 1, 3 (D.Md.1971). They were developed, at least with regard to intoxication, primarily to allow drunkenness as a defense to first-degree murder but not to lesser degrees of homicide. The attempt to apply the terms to nonviolent crimes such as escape has produced confused reasoning and disparate results.[7]

> Categorizing all crimes as either having "general" or "specific" intent seems too mechanical and often forecloses evaluation by the court of the important consideration involved, i. e., what elements are involved in the crime and whether the prosecution has satisfactorily established them.

"Intoxication as a Criminal Defense," 55 Colum.L.Rev. 1210. 1217 (1955).

Whenever intoxication (or coercion or mistake) is raised as a mitigating factor, use of the "specific" and "general" intent labels interferes with the crucial analysis a court should make in escape cases: what constitutes the "escape" element of the crime?

Most courts, confronted with evidence that a defendant could not or did not form an intent to leave and not to return, have held such an intent essential to proof of the crime of escape. "We hold that the felony of escape has as a necessary element the *intent* of the accused to evade the due course of justice. . . . It seems to us that the very

---

5. State v. Wharff, 257 Iowa 871, 134 N.W.2d 922 (1965); People v. Haskins, 177 Cal. App.2d 84, 2 Cal.Rptr. 34 (1960).

6. Giles v. United States, 157 F.2d 588, 590 (9th Cir. 1946), cert. denied, 331 U.S. 813, 67 S.Ct. 1197, 91 L.Ed. 1832 (1947). The court rejected defendant's claim of variance from the charge of attempted escape. Defendant argued his escape was consummated because he traveled three and a half miles from Alcatraz.

7. In United States v. Woodring, 464 F.2d 1248 (10th Cir. 1972), the court said specific intent was not an element of § 751, but approved a jury instruction that specific intent must be proved because the indictment charged "willful" escape. *See also* Mills v. United States, 193 F.2d 174 (5th Cir. 1951), cert. denied, 343 U.S. 969, 72 S.Ct. 1067, 96 L.Ed. 1365 (1952).

word 'escape' connotes an attitude of mind as well as an act. One does not 'escape' without desire and intent to avoid confinement." Gallegos v. People, 159 Colo. 379, 387, 411 P.2d 956, 960 (1966). In *Gallegos* the court allowed defendant to introduce evidence that he was so drunk he could not form the state of mind required. For other intoxication cases in agreement, *see* Chandler v. United States, 378 F.2d 906 (9th Cir. 1967); Mills v. United States, 193 F.2d 174 (5th Cir. 1951), cert. denied, 343 U.S. 969, 72 S.Ct. 1067, 96 L.Ed. 1365 (1952);[8] People v. Dolatowski, 94 Ill.App.2d 434, 237 N.E.2d 553 (1968).

Only a voluntary departure from custody is an escape. Although defendants in the following cases failed to prove their departures were coerced by others or compelled by necessity, the courts recognized that such proof would establish lack of necessary criminal intent. United States v. Snow, 157 U.S.App.D.C. 331, 484 F.2d 811 (1973); United States v. Chapman, 455 F.2d 746 (5th Cir. 1972); People v. Richards, 269 Cal.App.2d 768, 75 Cal.Rptr. 597 (1969).

A prisoner who was released from jail upon presentation of a bond which he did not know was defective was not guilty of escape. State v. Pace, 192 N. C. 780, 136 S.E. 11 (1926). Nor did defendant escape after being told by an officer with apparent authority that he was discharged. People v. Weiseman, 280 N.Y. 385, 21 N.E.2d 362 (1939).

In a variety of other circumstances, intent to escape has been included as an element of the crime: United States v. McPherson, 436 F.2d 1066 (5th Cir.), cert. denied, 402 U.S. 997, 91 S.Ct. 2181, 29 L.Ed.2d 163 (1971); United States v.

Locke, 425 F.2d 313 (5th Cir. 1970); State v. Lakin, 131 Vt. 82, 300 A.2d 554 (1973); State v. Hendrick, 164 N.W.2d 57 (N.D.S.Ct.1969); Cassady v. State, 247 Ark. 690, 447 S.W.2d 144 (1969); State ex rel. Sublett v. Adams, 145 W. Va. 354, 115 S.E.2d 158 (1960), cert. denied, 366 U.S. 933, 81 S.Ct. 1652, 6 L. Ed.2d 392 (1961).[9]

The courts have been close to unanimous in requiring intent to escape probably for two reasons. The first is "the desire to have one human element of 'blameworthiness' as a basis for punishment."[10] The other reason is the knowledge that a prisoner who has no intent to escape—because he is grossly intoxicated, or thinks his jailer has told him to leave, or mistakes the boundaries of his confinement, or has a gun held to his head by another inmate—is not likely to endanger society, as a wilful escapee is. Escape is prohibited not only because the state wants its prisoners to remain confined until their sentences expire or their paroles are granted, but also because a determined escapee may kidnap a hostage, kill a guard, steal an automobile or rob a store to facilitate his escape. A prisoner who leaves his custody without an intent to escape will not use force to leave the prison nor resist capture when he is found.

These cases lead us to a definition of escape as a voluntary departure from custody with an intent to avoid confinement. Whatever label is placed on this intent, a defendant under § 751 is entitled to an instruction that includes this mental component as an element of the crime which the government must prove. If the defendant offers evidence that he was intoxicated at the time of the offense,[11] the jury must

8. The district court in *Mills* submitted a drug-influence defense to the jury; the court of appeals was equivocal as to the propriety of the defense. For cases contra to those noted above, *see* State v. Wharff, 257 Iowa 871, 134 N.W.2d 922 (1965); People v. Haskins, 177 Cal.App.2d 84, 2 Cal.Rptr. 34 (1960).

9. *Contra*, People v. Siegel, 198 Cal.App.2d 676, 18 Cal.Rptr. 268 (1961).

10. "Criminal Attempts—The Rise and Fall of an Abstraction," 40 Yale L.J. 53, 69 (1930).

11. There was enough evidence of Nix' intoxication to let the jury decide whether the drunkenness was so severe that he could not form the requisite intent. *Cf.* Heideman v. United States, 104 U.S.App.D.C. 128, 259 F.2d 943 (1958).

be instructed to consider whether he was so intoxicated he could not form an intent to escape.[12] The instructions in this case withdrew the mental element from the jury's consideration.[13] In overruling Nix' objections to the two instructions quoted earlier, the district court erred. Defendant's conviction is vacated and the case is remanded to the district court for a new trial.

Vacated and remanded.

PELL, Circuit Judge (dissenting).

I wholeheartedly approve of and concur in the perceptive analysis in Judge Sprecher's opinion for the majority in which he has cut through the semantical mishmash that frequently seems to evolve from judicial sallies into the obscure vistas of differentiation between general and specific intent.

I am unable, however, to concur in the result reached in the majority opinion and respectfully dissent therefrom.

The only close aspect that I find in this case is that part of the court's instructions to the effect that if the defendant acted or failed to act because of intoxication it was not a defense. I do not quarrel, nor do I understand that the majority does, with the immediately preceding statement in the charge that the crime does not involve specific intent. I would accept the majority standard that escape is a voluntary departure from custody with an intent to avoid confinement.

Looking at the record in the light of this standard I am convinced that Nix

had a fair trial and that the jury found him guilty under instructions, which with the one questionable exception, properly were applicable under the standard stated in the majority opinion. While the reference to intoxication not being a defense might be prejudicially erroneous in some conceivable factual situations,[1] I do not deem it so here.

Intoxication unless it is pursued to the point of unconsciousness does not prevent an act from being voluntary nor from being participated in for the purpose of accomplishing a desired end. The fact that a prisoner might be less inclined to attempt an escape if his sense of derring-do were uninfluenced by spirits should be no defense any more than it would be in a driving-under-the-influence case to the still ambulatory besotted person who fancies that he can perform feats of driving which he would not have considered attempting if sober.

From the testimony of the defendant's fellow inmates (five of whom were serving time for bank robbery, one for kidnapping, and one for conspiracy and assault with a deadly weapon) home brew and occasionally whiskey were flowing with the freedom of water at the Marion federal penitentiary. Accepting their testimony at face value (despite the patent incredibility of much of it) Nix was drunk on May 10, 1972. The only testimony which corresponded at all timewise with Nix's apprehension in the truck outside the prison walls was from Richard Montgomery[2] who had been reading in his cell at about 1:00 a.m. on May

---

12. As the dissent notes, several of the instructions given mentioned "intent" and "intentionally." But the district judge did not define or explain such intent except to say that "specific intent" was not involved and that evidence of defendant's intoxication could not be considered by the jury.

13. The government in the *Peterson* brief cites a number of cases where the same instruction on the elements of escape under § 751 was given. In none of these cases was a question of intent to escape raised. United States v. McCray, 468 F.2d 446 (10th Cir. 1972); United States v. Morris, 451 F. 2d 969 (8th Cir. 1971); United States v. Rudinsky, 439 F.2d 1074 (6th Cir. 1971);

Strickland v. United States, 339 F.2d 866 (10th Cir. 1965); Hardwick v. United States, 296 F.2d 24 (9th Cir. 1961).

1. For example, if the proof showed that Nix had climbed into a truck, and had then consumed alcoholic beverages to the point of becoming unconscious, after which the truck was moved outside the prison walls, the matter of intoxication might have some relevancy.

2. Montgomery's description of Nix's general aptitude as a drinker of alcoholic beverages was as follows:

"When Joe Nix—when I have seen Joe Nix drinking alcohol, he—he just—through talk-

11. When Nix was brought by the cell Nix told Montgomery that he was being put in segregation for being drunk. Montgomery further testified that he could smell alcohol on Nix's breath, that he observed Nix as having bloodshot eyes, and that Nix was wobbling and unsure on his feet. One other witness testified that at some time during the day preceding Nix's apprehension he had observed Nix "knocked out, the last time I seen him, laying on one of them crates." No witness described Nix's condition as either being sober or intoxicated at any time during the evening. Nix or the dummy was in Nix's cell at the checks at 4 p.m., 7 p.m., and 10 p.m. The truck had been loaded sometime before it was moved out of prison confine after the 10 p.m. check. Nix was standing inside the truck when the fastened rear door, the only entrance to the truck, was opened after midnight.

Despite the fact that the judge stated that intoxication was not a defense, it is clear that the jury was informed that a conviction required a determination that Nix had intentionally committed the act of attempting to escape.

As a background matter, the indictment, which was read to the jury and a copy of which was taken to the jury room during deliberations, charged that Nix "did unlawfully and willfully attempt to escape from such custody [of the Attorney General]."

Counsel for Nix presented the case during final summation consistently with what I conceive to be the standard of intent laid down in the majority opinion. Thus:

"Very briefly, let me explain something to you that's been left out of the final argument, that wasn't mentioned in the opening argument about what we're involved in, and that simply, ladies and gentlemen, is that this is a criminal case. We have accused a man of committing a crime.

"It depends upon two things, as I believe the judge is going to instruct you; one, that he did a certain act, and secondly, that he intended to that act. [sic]

"Two elements that the prosecution must prove. Two things. Not just that Joe Charles Nix was out in the van in the lot, but also that he intended to be out in the van in the lot, and that was his desire and where he intended to be at this time and—involved in this situation. Two things.

* * * * * *

"If, when you go in that jury room, there is a reasonable doubt in your mind as to whether or not this man had that intention and committed that act, it's your duty under the law to return a verdict of not guilty.

* * * * * *

"Do you think that's the kind—that that sort of circumstance shows that this man intended to escape? I suggest to you it does not, that was not his intention at the time.

* * * * * *

"The key of what's going on here has to do with intention. Let's examine these exhibits and see what we had.

* * * * * *

"Take the exhibits one by one, and study them one by one, and see where there was an intention to perform this act. See where it's proved beyond a reasonable doubt.

* * * * * *

"I suggest to you there's nothing in this case, when you start fitting these pieces together to see what they mean in relation one to another, that suggest anything other than reasonable doubt about what this man's intention was, what his mind was, what is going on in his mind, and that's what the element of intent to commit the act is all about. If it were enough,

ing real loud, his eyes get real bloodshot, he gets acting like a real jolly person, just a jolly, happy-go-lucky person, and as—the

more he gets to drinking, the more ignorant he becomes, and it's obvious he can't handle his liquor."

because he's outside the wall, to say that this man's guilty of escape, we wouldn't be here today. Everybody says he's outside.

* * * * * *

"Let's see if it's not plausible, and it's simply this, that he got drunk; with everything else that goes in and out of this penitentiary, I suggest to you that it's quite believable that there's alcohol going in and out of it, too.

* * * * * *

"I ask you to go over every bit of this evidence, if you will, as I've suggested it to you, and study it, and see if it isn't very equivocal, very doubtful, and see if there is really one iota of conclusive, undisputed evidence which says this man intended to be secretive in that van outside that yard."

The judge, consistently with his view that this was a crime requiring for conviction only proof of general intent, charged in part as follows:

"To constitute the crime charged in the indictment, there must be the joint operation of two essential elements, an act forbidden by law and an intent to do the act.

"Before a defendant may be found guilty of a crime, the prosecution must prove beyond a reasonable doubt that under the statute described in these instructions, the defendant was forbidden to do the act charged in the indictment, and that he intentionally committed the act.

"In these instructions the terms knowingly, willfully and unlawfully are used. I will define those terms for you now.

"An act or failure to act is done knowingly if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

"An act is done willfully if done voluntarily and intentionally, and with the specific intent [3] to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law.

"Unlawfully means contrary to law. So to do an act unlawfully means to do willfully something which is contrary to law."

Since, in my opinion, it was sufficient that the jury understand that there must be an intent to commit the crime, and inasmuch as the jury was fully informed to that effect and the evidence overwhelmingly supported the fact that there was an intent on the part of Nix to attempt to escape, I would affirm the judgment of conviction.

I think it is a fair observation that following the publication of the majority opinion no escapee apprehended within a relatively short time after leaving prison walls will admit to being a teetotaler.

---

3. As indicative of the uncertainties involved in the use of specific and general intent, the trial judge in connection with doing something the law forbids did use the term "specific intent" although later in the charge he stated that the crime itself did not involve specific intent.