**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lawrence Daniel CALDWELL,
Defendant-Appellant.**

**No. 77–1721.**

United States Court of Appeals,
Seventh Circuit.

Argued April 9, 1979.

Decided June 27, 1980.

Joanne M. Frasca, Sidley & Austin, Chicago, Ill., for defendant-appellant.

Theodore J. McDonald, Asst. U.S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, SWYGERT, Circuit Judge, and JAMESON, Senior District Judge.*

JAMESON, District Judge.

Lawrence Daniel Caldwell has appealed his conviction of unlawful attempt to escape from the United States Penitentiary at Marion, Illinois, in violation of 18 U.S.C. § 751(a).[1] We affirm.

### Procedural Background

Caldwell was indicted on March 30, 1977. Larry O. Baker was appointed to represent him. At trial Caldwell was permitted to act as co-counsel. He made his own opening statement, cross-examined Government witnesses, examined his own witness on direct examination, and made his own closing argument.

On appeal Baker filed a brief on Caldwell's behalf on October 13, 1977, and the Government filed its answer brief on November 11, 1977. In a letter dated December 15, 1977, Caldwell informed the court that he did not consider the brief filed by Baker a valid document because he had never authorized its filing.

Baker had withdrawn as counsel for Caldwell on October 13, 1977, the day the brief was filed. Caldwell later obtained other counsel for this appeal. They filed a supplemental brief on November 13, 1978. The Government filed its supplemental brief on January 2, 1979, and appellant filed a reply brief on February 1, 1979.

Oral argument was presented on April 9, 1979. On March 19, 1979 the Supreme Court had granted certiorari in *United States v. Bailey*, 585 F.2d 1087 (D.C.Cir. 1978), one of the cases upon which appellant relied. An order was entered on May 31, 1979, holding this appeal under advisement until decision by the Supreme Court in *United States v. Bailey*. *Bailey* was decided by the Supreme Court on January 21, 1980, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575. Both parties filed supplemental briefs following the decision in *Bailey*.

### Factual Background

At the time of the alleged offense, January 1, 1977, Caldwell had been incarcerated at the Marion Penitentiary for approximately four years. He had previously been confined at the United States Penitentiary in Leavenworth, Kansas, and the District of Columbia jail, following his conviction in the District of Columbia of felony murder.

In February, 1976, Caldwell was an eyewitness to a murder within the prison, where he saw an inmate stab another inmate. He testified that he was contacted by friends of both the assailant and the victim and threatened with death by each group if he failed to cooperate.

On January 1, 1977, eleven months after he had witnessed the murder, Caldwell attempted to escape. He obtained a hacksaw

---

\* The Honorable William J. Jameson, Senior District Judge of the United States District Court for the District of Montana, is sitting by designation.

1. 18 U.S.C. § 751(a) provides in pertinent part: Whoever escapes or attempts to escape from the custody of the Attorney General . . . or from any institution or facility in which he is confined by direction of the Attorney General, . . . shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both . . . .

and sawed through a metal window bar in the kitchen where he had worked for over a year. After going out the window he climbed up to the roof and across to the loading dock. A guard spotted movement over the kitchen and dining room area and fired a warning shot and then fired two shots at the suspect. When Caldwell was apprehended he had a buckshot wound and had with him a deck of Tarot cards, radio, food, maps, and a small amount of change.

Caldwell testified that believing he was threatened with death, he felt he had these options: (1) to arm and defend himself, but this would be futile; (2) report the incident, but if he did so, he would be stigmatized as an informer and to be protected would be placed in a segregation unit, which would mean solitary confinement; and (3) escape from the penitentiary and remain free.

### Contentions on Appeal

Appellant contends that (1) the district court erred in failing to instruct the jury on the defense of duress; (2) the court erred in admitting into evidence and submitting to the jury an exhibit which referred to the defendant's convictions with excerpts underlined in red ink; and (3) appellant was denied his constitutional right to effective assistance of counsel.[2]

### Instructions on Defense of Duress

The court instructed the jury that the crime charged required proof of specific intent and that to "establish specific intent, the prosecution must prove beyond a reasonable doubt that the defendant knowingly did an act which the law forbids, purposely intending to violate the law". The

terms "knowingly", "willfully", and "unlawfully" were properly defined. The court did not, however, give an instruction on the defense of duress; nor was any duress instruction requested.[3] Appellant argued that the failure to give an instruction on the duress defense was reversible error under the "controlling cases" of *United States v. Nix*, 501 F.2d 516 (7 Cir. 1974) and *United States v. Bailey*, 585 F.2d 1087 (D.C.Cir. 1978).

In *Nix*, the defendant had been convicted of an attempt to escape from the United States Penitentiary at Marion. There was substantial evidence that he was intoxicated at the time of the alleged escape. In reversing the conviction, with one judge dissenting, this court held that escape is a "voluntary departure from custody with an intent to avoid confinement" and that the defendant was "entitled to an instruction that includes this mental component as an element of the crime". The court continued: "If the defendant offers evidence that he was intoxicated at the time of the offense, the jury must be instructed to consider whether he was so intoxicated he could not form an intent to escape." 501 F.2d at 520.[4]

Appellant argued in his first supplemental brief that the rule "established in *Nix* has been also applied to cases involving defenses of duress", citing *United States v. Bailey, supra.* In *Bailey* the defendants were convicted of escape from the District of Columbia jail. They had been recaptured after remaining at large for periods ranging from one month to three and one-half months. At the trial the defendants had adduced evidence that there were fre-

---

**2.** While other questions were raised in the initial brief filed by Baker, these are the only errors claimed in the supplemental briefs.

**3.** No instructions were offered by the defendant, and no objection was made to any of the instructions given by the court. Caldwell did not attend the conference where the proposed instructions were considered, but Baker informed the court that Government counsel had given a copy of the Government's proposed instructions to Caldwell, who "said he had no comments or anything about these matters".

**4.** In *Nix* the trial court's instructions had mentioned "intent" but did not define or explain intent except to say that "specific intent" was not involved and that evidence of defendant's intoxication could not be considered by the jury. 501 F.2d at 520, n. 12. This court held that the "instructions . . . withdrew the mental element from the jury's consideration". *Id.* at 520.

quent fires in the jail, that they had been threatened with physical violence by guards, and that some of them had been beaten by guards and had received inadequate medical treatment. The district court instructed the jury that the conditions at the jail were not a defense and rejected the defendants' proffered instruction on duress as a defense, holding that the duress defense was unavailable because they had not turned themselves in after they had escaped the allegedly coercive conditions.

The court of appeals, with one judge dissenting, reversed, holding that the district court should have allowed the jury to consider the coercive conditions at the jail in determining whether the defendants had formulated the requisite intent to sustain a conviction under § 751(a), which required the prosecution to prove that the defendants left federal custody "voluntarily" and with an "intent to avoid confinement".[5] The court held further that an escapee was not acting with the requisite intent if he escaped solely in order to avoid "nonconfinement conditions", as opposed to "normal aspects of 'confinement'." 585 F.2d at 1093, n. 17.

In reversing, the Supreme Court rejected the court of appeals' "narrow definition of confinement" and held that "the prosecution fulfills its burden under § 751(a) if it demonstrates that an escapee knew his actions would result in his leaving physical confinement without permission." 100

S.Ct. at 633. The Court concluded that it need not speculate "on the precise contours of whatever defenses of duress or necessity are available against charges brought under § 751(a)." The Court continued in part:

Under any definition of these defenses one principle remains constant: if there was a reasonable, legal alternative to violating the law, "a chance both to refuse to do the criminal act and also to avoid the threatened harm," the defenses will fail. LaFave & Scott, *supra*, [W. LaFave & A. Scott, Handbook on Criminal Law], at 379. Clearly, in the context of prison escape, the escapee is not entitled to claim a defense of duress or necessity unless and until he demonstrates that, given the imminence of the threat, violation of § 751(a) was his only reasonable alternative. [Citing *United States v. Boomer*, 571 F.2d 543, 545 (10 Cir.), *cert. denied*, 436 U.S. 911 [98 S.Ct. 2250, 56 L.Ed.2d 411] (1978)].[6]

100 S.Ct. at 634–35.

· · · · ·

We need not decide whether such evidence as that submitted by respondents was sufficient to raise a jury question as to their initial departures. This is because we decline to hold that respondents' failure to return is "just one factor" for the jury to weigh in deciding whether the initial escape could be affirmatively justified. On the contrary, several considera-

---

**5.** In holding that "escape" for the purposes of § 751(a) requires "a voluntary departure from custody with an intent to avoid confinement", the court followed the definition of this court in *Nix, supra.* 585 F.2d at 1093.

**6.** In *United States v. Boomer,* a duress instruction was given which stated that to provide a legal excuse . . . all the following conditions must exist:

· · · · ·

(2) There must be no time for a complaint to the authorities or there must exist a history of futile complaints which make any benefit from such complaints illusory;

· · · · ·

(4) The prisoner must intend to report immediately to the proper authorities when he attains a position of safety from the immediate threat.

The defendants objected to these two conditions. In holding both proper, the court said in part:

The second paragraph in the instruction advises the jury that the defendants' attempted escape was not excused if they had time to complain to the prison authorities about their imminent danger, unless there was evidence of prior futile complaints of similar nature which would indicate that any benefit from a complaint would be only illusory. . . . [A]n attempted escape, resulting from duress or coercion, is not to be excused unless the person involved intends to turn himself in to proper authorities once he has successfully extricated himself from his highly dangerous immediate situation. We believe that too is a correct statement of the law.

571 F.2d at 545.

tions lead us to conclude that, in order to be entitled to an instruction on duress or necessity as a defense to the crime charged, an escapee must first offer evidence justifying his continued absence from custody as well as his initial departure and that an indispensable element of such an offer is testimony of a bona fide effort to surrender or return to custody as soon as the claimed duress or necessity had lost its coercive force.

100 S.Ct. at 635–36.

■ While Caldwell was captured during his attempted escape, it is clear that he had no intention of turning himself in if the escape had succeeded. He testified:

I didn't intend to be frivolous about it. I intended to escape. I intended to remain free. (Tr. 92).

It was eleven months after he witnessed the murder before he attempted to escape. It was apparent from the evidence he had planned the escape for some time. He admitted that he had the opportunity to notify the prison authorities of the threats against his life, but he did not want to face the possibility of solitary confinement. He admitted that he was not in immediate danger of death or severe injury. There is no evidence of any plan or intent to "surrender or return to custody". On the contrary, Caldwell expressly stated that he did not intend to return after he escaped. A specific intent instruction was given. Under the holding of the Supreme Court in *Bailey*, no duress instruction was required.

### Admission of Government Exhibit 1

■ Appellant contends that it was reversible error to admit into evidence Government Exhibit 1, which contains the following, underscored in red ink:

FIRST DEGREE MURDER (IN VIOLATION OF T. 22 DCC, Section 2401)

\* \* \* \* \* \*

LIFE IMPRISONMENT ON COUNT 6;

\* \* \* \* \* \*

. . . All other counts to run concurrently with sentence imposed in Count 1.

The Government offered the exhibit for the purpose of proving one of the elements of the offense—that appellant was in the custody of the Attorney General. No objection was interposed to the admission of the exhibit,[7] although appellant did object to giving the exhibit to the jury, claiming that since it referred to first degree murder rather than felony murder and was underscored in red ink, it could not help but prejudice the jury against him.[8]

Appellant relies on *United States v. Spletzer*, 535 F.2d 950 (5 Cir. 1976), where the court held the admission of a certified copy of a prior judgment of bank robbery during an escape prosecution was reversible error. In *Spletzer*, however, the defendant had objected to the exhibit and had also stipulated to the conviction and confinement elements of the offense. In *Bailey, supra*, appellants argued, as here, that evidence of the prior conviction was improperly admitted. In distinguishing *Spletzer*, the court of appeals said:

Since the statute requires that the escapee must have been in custody by virtue of a conviction, evidence of any conviction for which a defendant is in custody when he escapes is directly relevant as long as this element is disputed. In the case on which appellant Bailey relies, *United States v. Spletzer, supra* note 17, the defendant had *stipulated* to the conviction and confinement elements of the offense.

7. When the Government offered its Exhibits 1, 2, and 3 the following colloquy occurred:
THE COURT: Have you seen them?
DEFENDANT CALDWELL: Yes, I have, Your Honor.
MR. BAKER: No, I haven't.
THE COURT: All right, the Clerk will get them for you, sir.
DEFENDANT CALDWELL: May I see them too, Mr. Baker?
THE COURT: Any objection gentlemen?
DEFENDANT CALDWELL: No.
MR. BAKER: No. Your Honor.

8. The court properly instructed the jury that a defendant's previous conviction of a felony was to be considered "only insofar as it may affect the credibility of the defendant as a witness and must never be considered as evidence of guilt of the crime for which the defendant is on trial here".

This course is also open to appellant Bailey on remand.

585 F.2d at 1105, n. 68.

Particularly in view of the fact that both Caldwell and his counsel had expressly stated that they had no objection to the exhibit and the *overwhelming* evidence of guilt, we conclude that the admission of the exhibit did not constitute reversible error.

### Effective Assistance of Counsel

Finally, appellant argues that he was denied effective assistance of counsel because of counsel's failure to request a jury instruction on the defense of duress and his failure to object to Exhibit 1.

We have concluded that appellant was not entitled to a duress instruction. While counsel should probably have objected to Exhibit 1 in the form in which it was presented, appellant as *pro se* counsel personally stated that he had no objection to its admission, and we have concluded that its admission did not constitute reversible error.

■ In *United States ex rel. Williams v. Twomey,* 510 F.2d 634, 641 (7 Cir.), *cert. denied,* 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975), this court held that "the Constitution guarantees a criminal defendant legal assistance which meets a minimum standard of professional representation." From our examination of the record we are satisfied that the services of appellant's court appointed counsel met this standard.

■ During oral argument the court received a letter from appellant stating that he had received a copy of an order allowing Joanne M. Frasca to argue the appeal and that it was his wish that Thomas H. Morsch, who was on the supplemental brief, present the oral argument. The argument was in fact made by Miss Frasca, who very ably presented appellant's case. Clearly appellant was not prejudiced in any way by having his case argued by Miss Frasca.

AFFIRMED.

1. I find this belief was corroborated by testimony of the chief correctional supervisor at the

SWYGERT, Circuit Judge, dissenting.

I respectfully dissent. Were defendant charged with escape rather than with attempted escape, I would be compelled to agree with the majority that "[u]nder the holding in *Supreme Court v. Bailey,* no duress instruction was required." At 148. In *Bailey,* the Court rejected a challenge to an escape conviction holding "that, where a criminal defendant is charged with escape and claims that he is entitled to an instruction on the theory of duress or necessity, he must proffer evidence of a bona fide effort to surrender or return to custody as soon as the claimed duress or necessity had lost its coercive force." 444 U.S. 394, 415, 100 S.Ct. 624, 637, 62 L.Ed.2d 575 (1980).

Here, in contrast to the situation in *Bailey,* defendant was indicted and convicted of attempted escape. He was apprehended while still within the confines of the prison. In such circumstances, I find the issue of a return requirement upon which the majority relies incapable of resolution if not irrelevant. The majority says defendant's entitlement to an instruction on duress was precluded by his intention, expressed in testimony at trial, "to remain free." At 148. Even if I agreed satisfaction of a return requirement should be a prerequisite to obtaining an instruction on duress in cases of attempted escape, I would not hold this defendant bound by that testimony. It is not inconceivable that he might have changed his mind once he effected his escape. His testimony on this point represents no more than an expression of future intent.

The majority also relies on the fact defendant admitted an opportunity existed to notify prison officials of the threats against him as defeating his claim that he was entitled to a duress instruction. Defendant testified, however, that seeking protection from authorities would have been tantamount to placing himself in solitary confinement.[1] Certainly, such segregation

United States Penitentiary at Marion, Illinois, that the only way to prevent harm against

does not represent the "reasonable" alternative which the Court in *dictum* in *Bailey* also said an escapee must show he pursued in order to obtain a duress or necessity instruction. 444 U.S. at 409, 100 S.Ct. at 634. I view the possibility of segregation not as a significant alternative to escape but rather as another "evil," evidence of which in other circumstances arguably could lay the groundwork for a requested instruction on the separate defense of necessity or "choice of evils."[2] It strains logic to premise entitlement to an instruction on a defense of duress excusing a crime on a showing by a defendant that he first pursued alternatives which in themselves might form the basis for a request for another instruction justifying the crime.

As a final point in support of its holding that a duress instruction was not required, the majority states defendant admitted he was not in immediate danger of death or severe injury at the time he escaped. I would note in response that the dispute between the two factions in the prison continued until defendant escaped. Defendant

testified that although other inmates were not actually engaged in the act of trying to harm him at the time he escaped, the threat of harm continued unabated throughout the eleven months after he witnessed the murder. In fact, Caldwell stated that the assailant involved in the murder incident was about to be sentenced increasing the likelihood of an attack against defendant. I fail to find this to be an admission that he was not facing the prospect of immediate harm.

Despite trial counsel's incompetence in failing to request an instruction on duress, defendant did bring the defense to the attention of the court by devoting considerable time in his closing statement to arguing that he escaped under duress. Defendant's testimony as to the threats he faced within the prison and the lack of alternatives open to him also was relevant to development of a duress instruction. Certainly, the trial judge was familiar with the defense having given an instruction on coercion in a prosecution for attempted escape conducted eleven months earlier. *See United States v. Micklus*, 581 F.2d 612 (7th Cir. 1978).[3] In

---

informants who have been threatened by other inmates is to lock the informants in protective segregation. While the Government attempted to develop that the possibility of a transfer existed as an alternative to any long-term protective segregation, there was also testimony that if defendant had chosen to go to authorities his reputation as an informant probably would have followed him wherever he was transferred making long-term protective segregation a certainty. The associate warden at the penitentiary testified that through such segregation measures officials are successful "for the most part" in keeping informants from being harmed, casting further doubt upon the availability of any alternative.

2. Section 3.02 of the Model Penal Code explains a defense of necessity or "choice of evils" in pertinent part as follows:

(1) Conduct which the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable, provided that:

(a) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged.

Modern cases have tended to blur the distinction between the defenses of duress and necessity, *see, e. g., United States v. Bailey*, 444 U.S. at 409, 100 S.Ct. at 634; *United States v. Michelson*, 559 F.2d 567, 568–69 n. 2 (9th Cir.

1977), and I draw it only to demonstrate that there were not any reasonable alternatives open to Caldwell.

3. I do not believe our holding in *Micklus* precludes the result I would reach in this case. In *Micklus*, we held a convicted escapee had not been denied effective assistance of counsel by his attorney's failure to develop a defense of necessity because that defense had not yet been recognized by federal courts. For similar reasons, we concluded that it was not plain error for the trial judge to fail to give a necessity instruction which had not been requested.

Micklus had demanded and received an instruction on duress or coercion. On appeal, he argued an additional instruction on necessity was required by evidence of threatened homosexual attacks. We attempted in that case to make clear the distinction between necessity and the related defense of duress without concluding whether the necessity defense was required by the facts. I think the fact that an instruction had been given on the closely analogous duress theory sufficiently distinguishes *Micklus* from this case.

As I noted earlier, the distinction between the two defenses has been blurred, and insofar as the two concepts overlap, an instruction as to one as in *Micklus* is sufficient. In this case, the distinction is not as important as the failure to give an instruction on either theory.

these circumstances, the trial judge could not avoid his duty to give a duress instruction by saying there had been no request. I would characterize as "plain error" his failure to give such an instruction and would reverse and remand for a new trial with instructions that an instruction on duress or coercion be given to the jury.

Finally, I would hold that the incompetence of defense counsel in not objecting to admission of the conviction and commitment papers also compels reversal. The documents themselves were certainly relevant as proof that the escape was from confinement for a prior conviction, *e. g.*, *United States v. Chapman*, 455 F.2d 746, 749 (5th Cir. 1972); *Johnson v. United States*, 313 F.2d 953, 956 (8th Cir. 1963) (*per curiam*), *cert. denied*, 375 U.S. 987, 84 S.Ct. 521, 11 L.Ed.2d 474 (1964); however, I see no way in which the emphasis given by the red ink to the nature of the prior crime contributed to the probative value. *Cf. United States v. Spletzer*, 535 F.2d 950, 955–56 (5th Cir. 1976). Defense counsel should have recognized the highly prejudicial nature of the underscoring.[4] The majority relies on his failure to object as waiving any error. I would hold instead that such failure falls below the constitutionally required minimum standard of professional representation.

---

4. I do not believe the potential for prejudice was removed by the standard instruction concerning evidence of prior convictions which the trial judge gave. The Government apparently recognized the impact Caldwell's prior conviction for first degree murder would have on the jury. In cross-examining defendant, the prose-

cution asked him to state the nature of the crime for which he had been convicted. Defendant's objection to the question was sustained. I find the prosecutor's attempt to remind the jury of the nature of that conviction to have been highly improper.