**Edward Howard CHANDLER and Henry May, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 21475, 21475A.**

United States Court of Appeals Ninth Circuit.

June 9, 1967.

Charles M. Giles, Tucson, Ariz., for appellants.

Richard C. Gormley, U. S. Atty., John L. Augustine, JoAnn D. Diamos, Morton Sitver, Asst. U. S. Attys., Tucson, Ariz., for appellee.

Before POPE, BARNES and HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge:

Edward Howard Chandler and Henry May appeal from their convictions, after a joint jury trial, for escape from a penal institution in violation of 18 U.S.C. § 751 (1964).

Chandler and May were prisoners at a minimum security federal prison camp located on Route 366, eight miles southeast of Safford, Arizona. A bed check made by prison personnel at 1:15 a.m. on August 27, 1966, did not reveal that any prisoners were missing. However, during another bed check made at 2:45 a.m. that morning, a correctional officer discovered that Chandler and May were missing.

At approximately 11:50 p.m. that day, on highway U.S. 70, ten miles east of Safford, Arizona, Highway Patrolman Kenneth F. Chlarson stopped a dump truck heading east, because one of its headlights was out. He found Chandler and May in the truck and arrested them. The officer also found in the truck two blankets, two jackets and a sleeping bag. It was later discovered that the blankets, bedroll and one jacket had been taken from Hugh Hammond's quonset hut, located three and a half miles north of the prison camp. It was also later ascertained that the dump truck was owned by W. A. Morris, and had disappeared from Morris' premises on August 27, 1966.

Chandler testified that he and May drank a half gallon of "brew" on August 26, 1966, that he never thought about leaving the camp, and that he did not remember leaving the camp. There was other testimony, however, which would have warranted the jury in finding that Chandler and May were not under the influence of alcohol or otherwise physically or mentally incapacitated, when they were found by Officer Chlarson.[1]

Appellants argue that the trial court erred in allowing the Government to elicit testimony regarding the possible theft of the dump truck in which they were riding at the time of their arrest.

Morris testified, over objection, that it was between 11:30 p.m. and midnight, on August 27, 1966, when he became aware that the dump truck was missing from the place where he conducted a sand, gravel and concrete business. This would be about twenty-two to twenty-four hours after Chandler and May were discovered missing from the prison camp. Defendants argue that, in view of this time lapse, this evidence tending to show that Chandler and May stole the vehicle had no probative value on the question of their intent to escape, since that intent must be determined as of the moment defendants left the prison compound. They also contend that the evidence was highly prejudicial because it indicated the likelihood that defendants had committed the independent crime of grand theft.

The Government was not required to prove that at the moment de-

---

[1] Since Chandler and May were not arrested until about 11:50 p. m. on August 27, 1966, the jury could have found that it was unlikely that either defendant would still be feeling the effects of alcohol consumed over twenty-four hours earlier.

fendants left the prison camp they intended to escape. If defendants left the camp inadvertently while wandering in an intoxicated condition, they may not have had the intent to escape at the moment they left the confines of the prison camp. However, if they thereafter decided to seize the opportunity to take off for more hospitable climes, they would be guilty of escape or attempted escape, notwithstanding the tardy formulation of the idea.

Proof that Chandler and May were driving away from the camp in a stolen vehicle would tend to show that, whether or not they originally intended to escape, they had that intent, and were putting it into action, at the time they were apprehended. See Reid v. United States, 9 Cir., 334 F.2d 915, 918.[2] If defendants had not intended to escape and were, at 11:50 p.m. on August 27, 1966, attempting to get back inside the prison, the fact that their vehicle was headed in the opposite direction might indicate only confusion of road signs. The jury could find, however, that defendants could not have intended to reappear in or near the prison camp with a stolen truck; and so their purpose must have been to escape.

■ The testimony in question was therefore relevant on the issue of intent. Moreover, in our opinion, the importance of this evidence in proving a necessary element of the crime charged outweighs the possible prejudice to defendants resulting from the circumstance that it also tended to prove the commission of another offense. This being the appropriate test to be applied, we hold that the trial court did not err in receiving the evidence concerning theft of the truck. See Fernandez v. United States, 9 Cir., 329 F.2d 899, 908.[3]

Appellants argue that the trial court erred in admitting in evidence the Government's exhibits Nos. 8, 9, 10 and 13, because they were not authenticated in the manner prescribed in Rule 44(a), Federal Rules of Civil Procedure. This rule is made applicable in criminal matters by Rule 27, Federal Rules of Criminal Procedure. Appellants further argue that, without those exhibits, the evidence was not sufficient to sustain the convictions.

■ This court has previously stated that in order to sustain a conviction for escape, there must be proof of three facts: "(a) that there was a conviction, (b) that there was an escape, and (c) that such escape was from a confinement arising by virtue of the conviction." Hardwick v. United States, 9 Cir., 296 F.2d 24, 26. See, also, Strickland v. United States, 10 Cir., 339 F.2d 866, 867–868. Appellants contend that the Government established both the previous conviction

2. In Cantrell v. United States, 116 U.S. App.D.C. 311, 323 F.2d 613, defendant was tried and convicted of manslaughter when the automobile in which he was attempting to escape from police, struck another automobile and caused the death of a five-year-old girl. In considering defendant's contention that the trial court should not have admitted evidence that the automobile which he was driving was stolen, the trial court stated:

"We think the evidence was material in this case because it indicated his purpose in attempting to escape from the officers. * * * It is true that generally evidence is not admissible which tends to prove that a defendant committed a crime other than the one for which he is on trial, but this rule is subject to certain well-established exceptions, to the end that all relevant facts and circumstances tending to es-

tablish any of the constituent elements of the crime for which the defendant is on trial may be made to appear." 323 F.2d at 614.

3. Further indication of a lack of prejudicial effect on defendant's case by admission of the evidence concerning the stolen vehicle is found in the court's following instruction to the jury:

"The defendant is not on trial for any act or conduct not alleged in the Indictment. Although you might conclude that either of the defendants had committed any act or any offense or any crime outside of the Indictment, you are to disregard those in arriving at the guilt or innocence of the defendants, because you are only to be concerned with the offense with which they are charged here."

and the confinement by virtue of such conviction with regard to May and the confinement by virtue of a conviction with regard to Chandler by means of the improperly authenticated documents that were received in evidence.

Exhibits Nos. 8 and 10 are copies of orders authorizing the transfer of Chandler and May from the Federal Correctional Institution at La Tuna, Texas, to the federal prison camp near Safford, Arizona. Exhibit No. 9 is a copy of Chandler's prison record card. When these three exhibits were offered in evidence, counsel for defendants objected on the ground of immateriality. With respect to exhibits Nos. 9 and 10, he objected on the further ground that they referred to other crimes.

However, no objection was made to these three exhibits on the ground that they lacked proper authentication. In referring to these exhibits, counsel for defendants actually told the trial court: "I don't object to the use of the copy rather than the original. * * *"

▮ Appellants do not contend that the reception of these three exhibits, despite their asserted lack of proper authentication, constituted plain error affecting substantial rights, within the meaning of Rule 52(b), Federal Rules of Criminal Procedure, nor do we believe that such a contention would have merit. Accordingly, we will not consider the argument, made here for the first time, that exhibits Nos. 8, 9 and 10 were inadmissible because of improper authentication.

This leaves for consideration the admissibility of exhibit No. 13. Under Rule 44(a), official records other than foreign records, or any entry therein, when admissible for any purpose, may be evidenced by an official publication hereof or by a copy (1) attested by the officer having the legal custody of the record, or by his deputy and (2) accompanied with a certificate that such officer has the custody. The rule indicates that the certificate of custody must be made by some public official other than the one who attests to the copy, and must be authenticated by the seal of such official's office.

Exhibit No. 13 is purportedly a carbon copy of a typewritten judgment and commitment entered in the case of United States v. Henry May, No. C–2374 Globe, in the United States District Court for the District of Arizona. It pertains to proceedings in the Tucson, Arizona office of that court on July 1, 1960. The copy carries the stamped name of another judge of that district court, and carries the filing stamp of the clerk of the district court, with the date of July 20, 1960, and what appears to be the signature of a deputy clerk.

The paper also carries the stamp of the United States Marshal and what appears to be the signature of a deputy United States Marshal. In addition, the document contains a certificate of the district court clerk, and what appears to be the signature of a deputy clerk, reciting that the carbon copy is a true copy. However, there is no Rule 44(a) certificate that the clerk or deputy clerk had custody of the original judgment and commitment.

In tendering this instrument, the United States Attorney did not purport to follow the procedure prescribed by Rule 44(a). Instead, he requested the trial court to take judicial notice of the judgment and commitment referred to in the copy, as an official record of that court. The trial court did so.

▮ Counsel for May concedes that a federal district court can take judicial notice of its own records, and this is the established rule. See Ira S. Bushey & Sons, Inc. v. W. E. Hedger Trans. Corporation, 2 Cir., 167 F.2d 9, 12; United States v. Austrew, D.C.Dist.Md., 202 F.Supp. 816, 821, aff'd 4 Cir., 317 F.2d 926; cf., United States v. Campbell, 7 Cir., 278 F.2d 916, 919. Counsel argues, however, that it may do so only if the court records are actually brought before the judge who is asked to take such judicial notice. No authority is cited for this

proposition, nor has our research produced any support for it.

■■ Subject to a challenge for accuracy, any information which the court finds acceptable as establishing what the official record is, may provide the basis for judicial notice of the court's records. The document described above, carrying the official stamps and signatures as indicated, provided ample information of this kind and counsel for May does not question its accuracy. Moreover, a court may judicially know the powers of its own clerk, ⹁and this trial court could therefore judicially know that the clerk who attested to the authenticity of the true copy had custody of the original judgment and commitment. See United States v. Bickford, 9 Cir., 168 F.2d 26.

Affirmed.