**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Don Garriga CHAPMAN, Defendant-Appellant.**

No. 71-2575
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Feb. 8, 1972.

---

* ■ Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

Robert L. Stone, Pensacola, Fla. (Court Appointed), for defendant-appellant.

William H. Stafford, Jr., U. S. Atty., Pensacola, Fla., for plaintiff-appellee.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

Don Garriga Chapman appeals from his judgment and sentence after jury trial for violation of Title 18, U.S.C., Section 751(a), escape from federal custody. At the time of the offense he had previously been convicted of and was serving a ten-year sentence at the United States Penitentiary, Atlanta, Georgia, for violation of Title 18, U.S.C., Section 2113(a), attempted bank robbery by force and violence. By virtue of a writ of habeas corpus ad prosequendum so as to permit his prosecution for another offense, Chapman was delivered to the United States Marshal for the Northern District of Florida and lodged in the Escambia County jail at Pensacola, Florida. He was in custody of the Northern District Marshal in Pensacola from February 14, 1971 until the time of the escape on April 17, 1971. On that date Chapman and a large group of other prisoners escaped from the Escambia County jail. He was not one of three prisoners who originally jumped a jailer and seized his keys, but was one of a larger group who were released by the original three and fled the jail after overpowering another deputy in the main lobby. Chapman's co-defendant Barfield in a federal court trial on April 9 for bank burglary was one of the original group. Chapman was arrested several days later by an F.B.I. agent when he left a Jacksonville, Florida motel where he was registered as Harold Jaffe. He had in his possession false identification and credit cards belonging to a "Harold Jaffe". At a post-arrest statement to the F.B.I. agents in Jacksonville, after receiving full *Miranda* warnings, Chapman acknowledged his identity and stated that he did leave the Escambia County jail on April 17 and that "all the prisoners bolted from the elevator when the doors opened". He made no indication in his statement that he left the Escambia County jail in any but a totally voluntary manner. He was returned to Pensacola where his conviction for escape followed.

At his trial Chapman defended on two grounds: (a) that he was forced by threats of great bodily harm made by other prisoners to join in the escape; and (b) that after the initial escape he remained at large because of fear of great bodily harm from Escambia County deputy sheriffs. He maintained that he never formed an intent to escape, and was in fact on his way to Atlanta to surrender himself when he was arrested by the Jacksonville F.B.I. agents.

On this appeal Chapman raises five issues, none of which appear to us to be meritorious and we accordingly affirm.

■ The first ground of claimed error is that the trial court should not have refused his request to require the production of two additional prisoners present during the escape to testify in support of his defense. It is clear from a reading of the record that production of these additional defense witnesses would have been merely cumulative and that the trial judge is not demonstrated to have abused the discretion committed to him under Rule 17(b), F.R.Crim.P. Seven other defense witnesses who were eye-witnesses to the escape were transported and maintained at federal expense. The testimony of the two witnesses, Anderson and Barfield, was cumulative and no necessity was shown for their being also transported to Pensacola and maintained at government expense during the trial. See our holding in Thompson v. United States, 5 Cir. 1967, 372 F.2d 826, 828; Taylor v. United States, 5 Cir. 1964, 329 F.2d 384, 386.

■ The next contention is that the trial court committed error in admitting government Exhibits 1, 2 and 3 into evidence. These exhibits were the judg-

ment and commitment for the prior bank robbery offense with the Marshal's return on the reverse thereof, (Exhibit 1), the writ of habeas corpus ad prosequendum under which Chapman was held at Pensacola at the time of the escape, and the Marshal's returns thereon properly authenticated by the Chief Deputy Clerk of the court, (Exhibit 2), and an additional writ of habeas corpus ad prosequendum under which Chapman had been transferred to and returned from the Middle District of Florida to the Northern District of Florida, together with the returns thereon, (Exhibit 3), also authenticated by the testimony of the Chief Deputy Clerk. The three elements of the offense of escape are (a) that there was a conviction, (b) that there was an escape, and (c) that the escape was from a confinement arising by nature of the conviction. Hardwick v. United States, 9 Cir. 1969, 296 F.2d 24; Strickland v. United States, 10 Cir. 1965, 339 F.2d 866. Government Exhibits 1, 2 and 3 were properly received in proof of elements (a) and (c), supra, of the offense, pursuant to Rule 27, F.R. Crim.P., which states: "An official record or an entry therein or the lack of such a record or entry may be proved in the same manner as in civil actions". The exhibits were qualified for admission in evidence under the provisions of Rule 44(a), Proof of Official Record, F. R.Civ.P.

Objection is further made on appeal to the leeway allowed government counsel in cross-examining each of Chapman's witnesses as to prior felony convictions. The questions asked were within the scope of legitimate inquiry and were relevant as directly bearing on the veracity of each of the witnesses under the rules articulated for this Court by Chief Judge Brown in Beaudine v. United States, 5 Cir. 1966, 368 F.2d 417, 421, and adhered to by us in a number of decisions.

The fourth point raised on appeal is the claimed error of the trial judge in instructing the jury that even if they should find that Chapman was initially forced by other prisoners to leave federal custody, that if he thereafter on his own volition decided to remain at large this would constitute the crime of escape. The meaning of escape is not defined by the section involved, § 751(a) of Title 18, U.S.C. Appellant calls our attention to escape as defined in 3 Wharton's Criminal Law, Section 1367: "An escape is committed whenever by any unlawful means a criminal in lawful custody voluntarily leaves and gains his liberty before he is delivered in the due course of law". The appellant's contention is that the key word in the definition of escape is custody, and that once Chapman was free of actual physical control he could not thereafter complete the offense of escape. This contention will not withstand critical analysis. The court's instructions were concise and were to the effect that voluntary failure to return to custody would be proof of one of the elements of offense, the escape or "leave" element. The appellant's proposition is that a prisoner cannot be guilty of escape once he is transported or transports himself beyond the confines of where he is supposed to be. Under this theory, a prison trustee assigned to picking up papers in the parking lot who unintentionally goes beyond the confines of his custody to pick up paper on the side of an adjacent road, and *then* decides to run away has not escaped because he was not in custody at the time that he reached that decision. Chapman argues that he was hiding in the bushes across from the jail when he decided to flee. The escape statute, Title 18, U.S.C., Section 751, may not be so narrowly construed, in our judgment. Custody in our view means the detainer of an individual's person by virtue of lawful process or authority. It is irrelevant whether he decided to flee his lawful custody within the jail building or as he contends while hiding in the bushes in the lot across the street. He did in fact voluntarily leave his custody and failed to return when he had opportunity. His use of a

false name and false identification cards when he was apprehended are indications of an intent not to return to federal custody. The instructions of the trial court were not in error in this respect. By the very definition from Wharton's Criminal Law relied upon by Chapman the instruction was proper.

■ The final point urged on appeal by Chapman is that his motions for judgment of acquittal and for new trial on the ground of insufficiency of the evidence should have been granted. He urges on brief that the "undisputed evidence" established the "involuntariness" of his escape. The jailer, Deputy Sheriff Hill, who was taken involuntarily with the escaping prisoners all the way to the back door did not see Chapman being forced to leave, and one of the jail inmates called by the defense, Johnny Earl Collier, testified that he did not know of anybody being forced to leave the jail against his will. Further, as indicated supra, when Chapman was arrested in Jacksonville his statement to the F.B.I. regarding the escape made no mention of his having left the jail unwillingly. As we have pointed out, the jury was entitled to consider the prior criminal records of Chapman's fellow jail inmates when weighing their credibility. It should also be noted that the appellant's claim that his continued absence from lawful custody was involuntary depends largely if not entirely upon the jury's assessment of his credibility when he claimed that he had a terror of being brutalized by Escambia County deputies should he turn himself in. There was ample evidence to support conviction, if the evidence is viewed in the light most favorable to the government. Glasser v. United States, 1944, 315 U.S. 60, 62 S. Ct. 457, 86 L.Ed. 680.

The appellant was fairly convicted by competent evidence under appropriate instructions to the jury by the trial judge. The judgment of conviction is

Affirmed.