**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Richard Alvin WOODRING, Defendant-Appellant.**

**No. 72–1099.**

United States Court of Appeals, Tenth Circuit.

Aug. 18, 1972.

---

Stephen K. Lester, Asst. U. S. Atty., Topeka, Kan. (Robert J. Roth, U. S. Atty., and Edward H. Funston, Asst. U. S. Atty., Topeka, Kan., on the brief), for plaintiff-appellee.

Carlton H. Carpenter, Denver, Colo., for defendant-appellant.

Before HILL, SETH and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Richard Alvin Woodring was convicted of unlawfully and willfully escaping from the Honor Farm, U. S. Penitentiary, Leavenworth, Kansas, in violation of 18 U.S.C.A. § 751(a).[1] He was sentenced to three years imprisonment to run consecutively to the sentence he is serving.

On July 13, 1968 Woodring was attending an evening movie for inmates at the Honor Farm. Woodring testified that during the movie he was tapped on the shoulder by someone and told that he was wanted at the dormitory; that he was met by a stranger outside the movie who pointed a gun at him and said, "You come with me"; that they were picked up by a car and driven to Kansas City, Kansas where he was dropped off on a viaduct; and that he then hitched a ride to his home near Tulsa, Oklahoma. Woodring further testified that he did not return to the penitentiary because he had had an altercation with an inmate he believed was "a member of the Mafia" and that a price had been put on him by John Ormento. About 19 months later Woodring was arrested by F.B.I. agents at Stapleton International Airport in Denver, Colorado.

Woodring called Lieutenant Ward, a prison official, as his witness in an apparent attempt to corroborate that a price had been placed on his head. Ward testified that he knew Woodring at Leavenworth and that during the time he worked at the Honor Farm, $200 had been dropped by two women in a car. Lieutenant Ward picked up the money and took two inmates inside the penitentiary. One of the inmates was John Ormento.

Woodring contends that: (1) the prosecution failed to prove that he willfully escaped as charged in the indictment; (2) the prosecution failed to prove specific intent as required by Instruction No. 11; (3) the trial court erred in its instructions on the elements of the offense; (4) the trial court erred in telling the jury there had been error in the prior trial; and (5) the trial court erred in not allowing him sufficient time to obtain another witness.

Woodring contends that the Government failed to prove a willful escape as set forth in the indictment. "Willfully" is defined as "with a purpose to commit an act, irrespective of intent to violate the law or to injure another," or "with a bad purpose". One is guilty of escape notwithstanding the late formation of the idea when he seizes an opportunity and does not return to the penitentiary. Chandler v. United States, 378 F.2d 906 (9th Cir. 1967). The evidence was substantial in support of the jury finding that Woodring willfully escaped in light of the fact that he did not turn himself in, and that some nineteen months passed following his alleged involuntary "abduction" from the Honor Farm.

---

1. "Whoever escapes or attempts to escape from the custody of the Attorney General, . . . or from any institution or facility in which he is confined by direction of the Attorney General, . . . shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both; . . ."

Woodring argues that Instruction No. 11 made specific intent an element of the crime and that the prosecution failed to prove such intent. The Court instructed the jury that "specific intent must be proved before there can be a conviction." The trial judge stated that "a person who knowingly does an act which the law forbids, intending with evil motive or bad purpose either to disobey or to disregard the law, may be found to act with specific intent." Where specific intent is an element of a crime it must be proven as an independent fact or clearly inferred from the evidence. The instruction on specific intent is not erroneous where willfulness is in the indictment. Even though specific intent is not an element of § 751(a), specific intent became the law of the case when the Court gave Instruction No. 11. The jury could reasonably infer from Woodring's actions that he had the requisite specific intent to escape.

Woodring also contends that Instruction No. 12 is prejudicial. It states:

"It is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted. So unless the contrary appears from the evidence, the jury may draw the inference that the accused intended all the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by the accused." (R.26).

Woodring alleges that by this instruction the jury was told that it could find specific intent required by Instruction No. 11 by the inference that a person ordinarily intends "the natural and probable consequences" of his acts. He contends that Instruction No. 12 has no place in a specific intent case. He also alleges that the Court confused the jury by giving two instructions on the elements of the crime. Instruction No. 6 defines escape as "a leaving or departure from the institution wherein the defendant was confined, without authority to do so." Instruction No. 9 defines the three elements of escape as: (1) conviction of an offense; (2) confinement by virtue of such conviction; and (3) escape from the Honor Farm during confinement. Woodring contends that the variety of instructions was detrimental to a clear understanding of the case by the jurors.

Since Woodring did not object to any of the instructions during the trial, we cannot reverse unless we find plain error affecting his fundamental rights. Fed.R.Crim.P., Rule 52(b). Although Instruction No. 12 should not have been given because a specific intent instruction had been given, still, when considered in context with all of the instructions, there was no plain error. McCarty v. United States, 409 F.2d 793 (10th Cir. 1969), cert. denied 396 U.S. 836, 90 S.Ct. 95, 24 L.Ed.2d 87 (1969); United States v. Tijerina, 407 F.2d 349 (10th Cir. 1969), cert. denied 396 U.S. 843, 90 S.Ct. 76, 24 L.Ed.2d 93 (1969); United States v. Denton, 336 F.2d 785 (6th Cir. 1964). It was clear to the jurors that they must find from the evidence beyond a reasonable doubt that Woodring had the specific intent charged.

Woodring next asserts that the trial court erred in telling the jury that "this is a retrial of the case that occurred because the other trial, there was error, it was not completed." The first trial of Woodring for violation of § 751(a) resulted in a mistrial. Woodring alleges that the Court's comment would have lead the jury to believe that there was a guilty verdict in the first case when there was no verdict at all. However, when the defense counsel objected to the statement the trial court retracted the word "error". There is no evidence that the jury speculated to the prejudice of Woodring.

Woodring's last contention is that the trial court erred in not allowing him sufficient time to obtain a witness. He wanted Warden Willingham to cor-

roborate his testimony that a price had been placed on his head. Woodring requested a continuance when Willingham was unavailable for trial. The Court denied it. At an *in camera* hearing the testimony of Woodring and Lieutenant Ward refuted any assertion that Willingham's testimony would directly corroborate Woodring's contention. Woodring could have taken Willingham's deposition at any time. There was no abuse of discretion by the trial court in denying a continuance.

Affirmed.