**Melvin G. STEWART, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 10681.**

District of Columbia Court of Appeals.

Submitted Dec. 16, 1976.

Decided March 22, 1977.

---

Thomas Lumbard, Washington, D. C., appointed by this court, for appellant.

Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease, Hamilton P. Fox, III and Robert M. McNamara, Jr., Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KERN, NEBEKER and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

Appellant Stewart was convicted of escape in violation of D.C.Code 1973, § 22–2601 after a trial on stipulated facts. Although the defendant acknowledged that he had failed to return to custody after being issued a temporary pass, he made a proffer of proof that his failure to return was not willful, but involuntary and induced by duress. The trial court found as a matter of law that the proffer, even if proved, would not constitute a valid defense to a charge of escape. Appellant contends that the court erroneously rejected his duress defense. We affirm.

The parties stipulated to the following facts. On August 14, 1975, while serving a sentence in the custody of the Community Correctional Center No. 6 (a halfway house), appellant Stewart "signed out" on a pass which required him to return at 11 p. m. He did not return to custody that night and was placed on escape status the following morning. Appellant contacted the halfway house on August 15, however, and explained that he had been abducted while returning to the house; that he had been shot at while fleeing his abductors; that a friend of his had been shot; and that although he was no longer in his abductor's company he was afraid to return to the halfway house. Stewart was advised at that time to turn himself in to the police. He did not follow this advice and a few days later spoke by telephone with the Chief of the Department of Corrections Warrant Squad who informed him that if he turned himself in he would be placed in protective custody at the Lorton Youth Center. Appellant did not accept the offer of protection and thereafter communicated only indirectly with the Department of Corrections. He finally turned himself in on October 1, 1975.

Defense counsel then made a proffer of the facts defendant Stewart expected to prove. He outlined the details of the abduction and indicated that appellant had decided to turn himself in a few days after he learned that his principal assailant "was no longer after him". He had remained in hiding because he felt that he was a "sitting duck" at the halfway house and "he did not wish to" accept the offer of protective custody at Lorton because it meant returning to a higher security institution from which he had recently been released due to good conduct. The parties submitted the case to the court on the basis of the stipulation and the proffer, and the court ruled that such facts did not establish a valid defense.

In reviewing the trial court's decision, we must first determine whether the defense of duress is applicable to a charge of escape under D.C.Code 1973, § 22–2601 when a defendant fails to return to custody after a temporary lawful absence. If we find that the defense is available, appellant's proffered statement must then be examined to determine whether its factual allegations, even if proved, were sufficient

to establish the defense as applied in the District of Columbia.[1]

Although this court has not had occasion to determine whether the defense of duress is applicable to a charge of escape, the defense has been accepted by a number of other jurisdictions under circumstances where it is clear that the defendant left confinement in response to threats of death, substantial bodily injury or sexual attack by custodial officers, outsiders, or even other prisoners.[2]

The United States Court of Appeals for the District of Columbia has also recognized that an escape may be "involuntary" and therefore not criminal if it was committed "under compulsion, such as apprehension of serious and immediate bodily harm". *United States v. Snow*, 157 U.S.App.D.C. 331, 484 F.2d 811 (1973), *citing Castle v. United States*, 120 U.S.App.D.C. 398, 347 F.2d 492 (1964), *cert. denied*, 381 U.S. 929, 85 S.Ct. 1568, 14 L.Ed.2d 687 (1965). *See also* D.C. Criminal Jury Instruction No. 5.04 (2d ed. 1972).[3]

■■■■ As a general rule, evidence of duress has been received only in situations in which the defendant escaped as a direct result of coercion which was placed upon him while he was still in custody. Upon consideration of the decisions of other courts, as well as the views presented by various commentators,[4] we conclude that the defense may properly be applied to an escape charge under D.C.Code 1973, § 22–2601. We do not distinguish cases in which duress was directed at a defendant while in custody from those situations in which he

---

1. The defense of duress in criminal cases is not to be confused with a defense of necessity which arises from the press of events rather than through the imposition on the actor of the will of another person. The parameters of the necessity defense in the District of Columbia were recently discussed in *United States v. Randall*, No. 65923–75 (D.C.Super.Ct. Nov. 24, 1976).

2. *See, e. g., United States v. Woodring*, 464 F.2d 1248 (10th Cir. 1972) (defendant forced at gunpoint to leave honor farm); *United States v. Chapman*, 455 F.2d 746 (5th Cir. 1972) (prisoner forced by threats of "great bodily harm" by other prisoners to join in escape); *People v. Lovercamp*, 43 Cal.App.2d 823, 118 Cal.Rptr. 110 (1974) (woman inmate fled custody because of fear of homosexual attacks); *Lewis v. State*, 318 So.2d 529 (Fla.Dist.Ct.App.1975) (defendant escaped to avoid inmate who threatened him with sexual assault and battery); *People v. Harmon*, 53 Mich.App. 482, 220 N.W.2d 212 (1974) (defendant escaped from reformatory to avoid threatened homosexual attacks); *State v. Green*, 470 S.W.2d 565 (Mo. 1971), *cert. denied*, 405 U.S. 1073, 92 S.Ct. 1491, 31 L.Ed.2d 806 (1972) (accused fled custody after he had reported two prior sexual assaults to prison authorities but was told to defend himself, submit, or "go over the fence").

3. Instruction 5.04 provides:

   If the defendant did not commit the criminal act with which he is charged willingly or voluntarily, but as the result of coercion exerted on him, he is not criminally responsible.

   Not every form of duress or compulsion, however, relieves a defendant of responsibility for a criminal act. Coercion which will excuse the commission of a criminal act must be immediate and of such a nature as to induce in the defendant's mind the well-grounded apprehension of death or serious bodily injury if the act is not done. There must be no reasonable opportunity for the defendant to escape the danger without committing the crime.

   When evidence of coercion is present, the Government must prove beyond a reasonable doubt that the defendant did not act under coercion. In other words, if you have a reasonable doubt whether or not the defendant acted under coercion as the court has defined it to you, your verdict must be not guilty.

   We note the last sentence of the instruction is not consistent with the preceding sentence and is not, as suggested, another way of saying the same thing. The instruction is complete and clear without it.

4. *See, e. g.*, R. Perkins, Perkins on Criminal Law 951–61 (2d ed. 1969); Gardner, *The Defense of Necessity and the Right to Escape from Prison—A Step towards Incarceration Free from Sexual Assault*, 49 S.Cal.L.Rev. 110 (1975); Newman & Weitzer, *Duress Free Will, and the Criminal Law*, 30 S.Cal.L.Rev. 313 (1957); Note, *Substantial Threats of Homosexual Attack May Support the Defense of Duress in a Prosecution for Prison Escape*, 3 Am.J. Crim.L. 331 (1975); Note, *Duress and the Prison Escape: A New Use for an Old Defense*, 45 S.Cal.L.Rev. 1062 (1972); Note, *Duress is a Defense to a Prison Escape*, 43 U.Cin.L.Rev. 956 (1974).

was prevented from returning to custody following a temporary lawful absence. We further hold that the defense may be established by proof of the following three conditions.

First, the defendant must show that his flight from custody (or failure to return following a temporary lawful absence) was necessitated by coercion of such a nature as to induce in the defendant's mind a well-grounded apprehension of immediate death or serious bodily injury. *See* D.C. Criminal Jury Instruction No. 5.04, *supra*; *United States v. Snow, supra*; *People v. Lovercamp*, 43 Cal.App.2d 823, 118 Cal.Rptr. 110 (Ct.App.1974). The coercion must be such as to operate on a reasonable person of ordinary stability and firmness; it must result in a fear that is reasonable and not exaggerated. *See generally* R. Perkins, Perkins on Criminal Law 951–55 (2d ed. 1969).

Second, there must be no reasonable opportunity for the defendant to avoid the danger except by resorting to escape from the institution. D.C. Criminal Jury Instruction No. 5.04, *supra.*

Third, the defendant must establish that he *immediately* returned to custody once the threat of harm was no longer imminent. A failure to surrender oneself after the threat has dissipated must be viewed as an escape accompanied by the intent to elude lawful custody. *See United States v. Chapman*, 455 F.2d 746 (5th Cir. 1972).

■ Turning to the facts in the instant case, the statement proffered by the defendant to justify his failure to return to the halfway house did not contain facts sufficient to satisfy the above conditions. The ambiguous assertion that appellant was a "sitting duck" when viewed in the context of the alleged threat emanating from outside the institution was not legally sufficient to show a nexus between the source of the coercion and the necessity to "escape" by not returning. Appellant did not return to custody for over a month and a half. Even assuming that initially he acted out of fear of immediate death or serious bodily injury, the proffer failed to establish that the threat of injury remained imminent and that his fear of harm was reasonable during that time period, or that he immediately returned to custody once the alleged threat had dissipated. In addition, it is unmistakably clear that the proffer could not be considered a valid defense in light of appellant's failure to surrender himself after he had been offered protective custody at the Lorton Youth Center. It was not his prerogative to choose between custody at the halfway house or no custody at all. He was still under sentence for the commission of a crime, and he could not mandate the conditions under which he is to serve the remainder of his term.

Accordingly, we agree with the trial court's ruling that the defendant's proffer did not establish a valid defense to a charge of escape under D.C.Code 1973, § 22–2601.

*Affirmed.*