UNITED STATES of America,
Plaintiff-Appellee,

v.

Curtis Ray MICHELSON,
Defendant-Appellant.

No. 76–1437.

United States Court of Appeals,
Ninth Circuit.

Aug. 23, 1977.

Dean C. Storkan, San Jose, Cal., submitted on briefs, for defendant-appellant.

Stan G. Pitkin, U. S. Atty., J. Ronald Sim, Asst. U. S. Atty., Seattle, Wash., submitted on brief, for plaintiff-appellee.

Before BROWNING and KENNEDY, Circuit Judges, and LUCAS,* District Judge.

LUCAS, District Judge:

Curtis Ray Michelson appeals from a jury conviction for violation of Title 18, Section 751(a),[1] escape from federal custody. Michelson began serving a twenty-two year sentence for armed bank robbery at the United States Penitentiary at McNeil Island on February 21, 1966 and was last seen at McNeil Island on January 15, 1973. Nearly two years later, on November 22, 1974, an FBI Agent arrested Michelson in Newport Beach, California, for escape from federal custody.

Defendant challenges his conviction on the ground that the Court erred in refusing to grant a requested jury instruction on duress or necessity, and refusing to remove his attorney and grant a continuance. As neither contention is meritorious, we affirm.

## INTRODUCTION

Michelson sought a jury instruction from the Court that a defense of duress or necessity to the crime of escape was proved if the jury found that defendant had escaped to save his own life. The request for this jury instruction was based upon *People v. Lovercamp*, 43 Cal.App.3d 823, 118 Cal.Rptr. 110 (1974). In *Lovercamp*, the California Court of Appeal held that a non-violent escape induced by the threat of a homosexual attack by other inmates may be justified on

grounds of necessity, provided certain other requirements—including the escapee's reporting to proper authorities—are met. The record in this case reflects the District Court's careful and thorough consideration of the defense recognized in *Lovercamp*, and a denial of the instruction based upon a number of considerations.

Evidence was presented supporting Michelson's contention that his escape was motivated by fear for his safety. At trial, three witnesses testified that Michelson and Santini, another inmate, had a violent fight. Michelson was hospitalized for several days for his injuries; Santini was placed in solitary confinement. Santini threatened to kill Michelson, and there was evidence showing that Michelson feared for his life. On the day Santini was released from solitary confinement, Michelson escaped.

There was, however, evidence suggesting other motives for the escape. The F.B.I. agent who arrested Michelson testified that Michelson, having been advised of his rights, freely admitted escaping from McNeil Island. Michelson also told the agent that his escape had been prompted not only by his beating by Santini, but also by the lengthy twenty-two year sentence imposed for the bank robbery and the Parole Board's refusal to set a release date for him.

## DURESS DEFENSE TO ESCAPE

■ At issue in this case is when is an escape from custody, induced by threatened physical attack, excused?[2] We begin our

---

* Honorable Malcolm M. Lucas, United States District Judge for the Central District of California, sitting by designation.

1. Section 751(a) provides:
   "Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or

conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both; or if the custody or confinement is for extradition or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction, be fined not more than $1,000 or imprisoned not more than one year, or both."

2. Courts facing the problem of escape motivated by fear of physical or sexual assault have analyzed the defense as being predicated upon necessity instead of duress. *See, e. g., People v. Lovercamp*, 43 Cal.App.3d 832, 118 Cal.Rptr. 110 (1974); *see also* M. Gardner, *The Defense of Necessity and the Right to Escape from Prison—A Step Towards Incarceration Free*

analysis of this troublesome question by considering the defense of duress and then turn to its application to the crime of escape. According to the classic definition of duress or coercion:[3]

"'Coercion which will excuse the commission of a criminal act must be immediate and of such a nature as to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. One who has full opportunity to avoid the act without danger of that kind cannot invoke the doctrine of coercion.'"

*United States v. Gordon*, 526 F.2d 406, 407 (9th Cir. 1975), *quoting Shannon v. United States*, 76 F.2d 490, 493 (10th Cir. 1935). Duress thus excuses a crime when another's unlawful threat of death or serious bodily injury reasonably causes the defendant to do a criminal act in a situation in which there was no other opportunity to avoid the threatened danger.[4] *See also, United States v. McClain*, 531 F.2d 431 (9th Cir.

1976), *cert. denied*, 429 U.S. 835, 97 S.Ct. 102, 50 L.Ed.2d 101 (1977).

Despite the wide acceptance of the duress defense, federal courts appear to have been reluctant to find an escape excused by duress.[5] No doubt this stems in part from a recognition that judicial sanctioning of escapes might increase their number. Moreover, federal courts have undoubtedly understood that excused escapes might disrupt the orderly operations of prisons,[6] and in the past, they "have adopted a broad hands-off attitude towards problems of prison administration." *Procunier v. Martinez*, 416 U.S. 396, 404, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1973).

In addition to these considerations, the Court is cognizant that its role in assuring inmate safety is limited. While a prisoner may properly turn in some instances to the courts to challenge the conditions of his confinement, *see Cruz v. Beto*, 405 U.S. 319,

*From Sexual Assault*, 49 S.Cal.L.Rev. 110 (1975) [hereinafter cited as "Gardner at"]. This Court adopts the duress rationale, however, both because of the harmony between the excuse analysis and prior duress cases, and because duress has generally been applied when the pressure upon the defendant stems from other human beings rather than from the physical forces of nature, such as storms, fires, etc. W. LaFave and A. Scott, *Criminal Law* at 381–385.

**3.** "Coercion" and "duress" are used interchangeably throughout the literature on the subject, and we use these terms co-extensively.

**4.** *See generally*, W. LaFave and A. Scott, *Criminal Law* at 375; Model Penal Code § 2.09(1).

**5.** *See* Gardner at 111–113 (1975). Based upon our research, and that of the parties, we have been able to locate only two federal appellate cases treating the defense of duress or necessity to the crime of escape. In *Dempsey v. United States*, 283 F.2d 934 (5th Cir. 1960), the Court upheld defendant's conviction over the objection that he escaped because he needed insulin for his diabetic condition. The Court held that the showing of intolerable conditions endangering defendant's life was insufficient because of the questionable medical diagnosis of defendant's condition, and his failure to seek medical relief from prison officials. Citing *Aderhold v. Soileau*, 67 F.2d 259 (5th Cir. 1933) (escape not the proper remedy for illegal imprisonment), the Court observed *in dicta* that the established law was that no defense of

intolerable conditions endangering human life existed to the crime of escape. As the facts of our case present an escape motivated by a threat upon defendant's life, distinguishable from escape motivated by intolerable conditions, we need not consider the merit of this comment. *See also* note 7.

In *United States v. Snow*, 157 U.S.App.D.C. 331, 484 F.2d 811 (1973), the Court apparently accepted the existence of the defense of "compulsion." The Court did not consider defendant's compulsion defense because of the absence of a sufficient factual record. On appeal following remand, the Court affirmed the conviction without further discussion. In accepting the existence of the "compulsion" defense, the Court cited *Castle v. United States*, 120 U.S.App.D.C. 398, 347 F.2d 492 (1964), a heroin addiction case, and did not consider the special problems this defense raises in the context of escape. In several cases, Courts of Appeals have briefly adverted to the assertion at trial of the duress defense to the crime of escape. *See, e. g., United States v. Davis*, 546 F.2d 583 (5th Cir. 1977); *United States v. Harp*, 536 F.2d 601 (5th Cir. 1976). To our knowledge, the merits of the duress defense were not addressed on appeal in any of these cases. *See also*, Annot., *Duress, Necessity or Conditions of Confinement as Justification for Escape from Prison*, 69 A.L.R.3d 678 (1976).

**6.** Gardner, *supra* at note 3, at 111–112; *see also, United States v. Brown*, 333 U.S. 18, 21 fn. 5, 68 S.Ct. 376, 92 L.Ed. 442.

321, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (per curiam), the task, as far as it is feasible, of protecting prisoners from assaults within prisons rests largely with correctional officials. In a few and very limited circumstances, however, it may not be possible for an endangered inmate to secure protection from correctional officials or from the courts. Absent the possibility of securing such protection, an inmate's only choices may be fight or flight. By expressly recognizing the availability of the duress defense to the crime of escape, the Court acknowledges that under a few and very limited circumstances an inmate's departure from custody may be excused. By so doing, the Court does not minimize society's substantial interests in the uninterrupted confinement of prisoners, but rather seeks a just and humane accommodation between those interests and the plight of the threatened, and unprotected, inmate.

■ Although duress may excuse the inmate's departure, it does not absolve his continued absence from custody. In other words, while coercion may shield the escapee from the imposition of additional punishment, it does not commute the sentence previously imposed. Thus, while the Court recognizes the availability of the duress defense to the crime of escape under proper circumstances,[7] the Court also recognizes that duress exonerates only the departure from custody, and not the continued absence.[8]

For this reason, an escape will not be excused by reason of duress if the escapee fails to submit to proper authorities immediately after attaining a position of safety. The inmate's failure to submit to proper authorities following the allegedly coerced escape amounts to an unexcused commission of the crime of escape. Therefore, when an escapee fails to submit to proper authorities, the asserted duress defense must be rejected because as a matter of law it does not negate the continued absence from custody.

Similarly, prior cases interpreting the escape statute, Section 751(a), have found that continued absence from custody constitutes the crime of escape. In *Chandler v. United States*, 378 F.2d 906 (9th Cir. 1967), this Court recognized that a prisoner whose departure from custody was not criminal could nonetheless be convicted of escape. There, the Court held that if an inmate formulates the intent to escape after an inadvertent departure from confinement, he is then guilty of escape. *Id.* at 908. Notwithstanding the lack of intent at the moment of departure, the Court there noted that:

"If they [escapees] thereafter decided to seize the opportunity to take off for more hospitable climes, they would be guilty of escape or attempted escape, notwithstanding the tardy formulation of the idea." 378 F.2d at 908.

Courts of Appeals for other circuits have similarly analyzed the crime of escape as predicated upon continued absence when confronted with the objection that the escape was not voluntary. In *United States v. Chapman*, 455 F.2d 746 (5th Cir. 1972), defendant contended *inter alia* that the trial court improperly instructed the jury regarding his claim that the escape was involuntary. Defendant claimed that he was forced to join a group of three other inmates who overpowered a jailer and then escaped. The jury was instructed that even

---

7. The situation presented here of threats of death must be distinguished from the defense to an escape from custody that the prison conditions are unsanitary or the treatment inhumane. *See, e. g., Dempsey v. United States, supra*, 283 F.2d 934 (5th Cir. 1960); *People v. Whipple*, 100 Cal.App. 261, 279 P. 1008 (1929). Whether or not such conditions can ever meet the required showing of a threat of serious bodily injury or death without an opportunity to avoid the danger is not before us, and of course, we indicate no view on that question.

8. We disagree with those Courts which rejected the duress defense because the coercer did not demand the commission of the specific crime committed, escape, for which the defendant was seeking an excuse. *See, e. g., People v. Richards*, 269 Cal.App.2d 768, 75 Cal.Rptr. 597 (1969). This narrow, formal approach ignores the obvious truism that regardless of the aim of the coercer, the coercion is alleged to have caused the defendant to escape.

if they should find that the defendant was initially forced by other prisoners to leave federal custody, "if he thereafter on his own volition decided to remain at large this would constitute the crime of escape." 455 F.2d at 749. The Court of Appeals approved the trial court's instruction which it characterized as saying that "the voluntary failure to return to custody would be proof of one of the elements of the offense, the escape or 'leave' element," *id.*, and upheld defendant's conviction for escape. In so holding, the Court specifically rejected defendant's argument that once free of custody he could not complete the crime of escape as being premised upon an erroneous construction of the escape statute, Section 751. *Accord, United States v. Woodring*, 464 F.2d 1248, 1250 (10th Cir. 1972).

In this case, we need not and do not decide whether defendant acted out of duress in escaping. His failure to report to the proper authorities during his nearly two years of freedom following his escape from McNeil Island Penitentiary precludes jury consideration of the asserted duress defense. Whatever the merits of the asserted duress defense, it did not license continued absence from custody.

In passing, we note that even if Michelson had submitted to the proper authorities after the escape, the question of whether the requirements of the duress defense were met would still remain.[9] As earlier noted, included in the requirements for duress is a showing that there was no other opportunity to avoid the threatened danger. In this case, defendant may have had the opportunity to avoid the threatened danger by seeking protection of prison officials. Defendant did not offer proof that he ever attempted to secure such protection, or that the consistent denial of such requests made it futile. Further, we note that defendant appears to have had ample opportunity to seek such protection as Santini, the inmate who threatened him, was placed in solitary confinement for approximately a month following their fight.[10]

■ We conclude that the trial court did not err in refusing to give the requested duress instruction because of defendant's failure to submit to custody after attaining a position of safety.

## APPELLANT'S SECOND CONTENTION

Appellant also challenges his conviction on the ground that the Court abused its discretion in not removing his attorney and granting a continuance. Defendant's letter requesting a continuance of the trial and removal of his counsel did not reach the Court until late on the Friday immediately preceding the Monday trial date. In the letter, Michelson claimed that his attorney, Mr. Patrick Steele, was "unsympathetic" toward the duress defense based upon *People v. Lovercamp, supra,* and that counsel was not diligently representing him. Prior to the commencement of trial, the Court carefully considered Michelson's letter. The Court noted defense counsel's efforts on behalf of his client, in part unknown to Michelson, and concluded that, to the contrary, he had worked diligently and actively

---

**9.** Under our analysis, the requirements for duress are not in any way reduced when asserted as a defense to the crime of escape.

**10.** In considering these factors we do not thereby adopt at this time the entire set of five conditions for the defense of necessity enumerated in *People v. Lovercamp,* 43 Cal.App.3d 823, 118 Cal.Rptr. 110 (1974). There, the Court required that the defendant show that he satisfied the following conditions:

"(1) The prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future; (2) There is no time for a complaint to the authorities or there exists a history of futile complaints which make any result from such complaints illusory; (3) There is no time or opportunity to resort to the courts; (4) There is no evidence of force or violence used towards prison personnel or other 'innocent' persons in the escape; and (5) The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat."

118 Cal.Rptr. at 115. We leave it to future courts to determine the relevancy of those of the above considerations not specifically addressed in the opinion.

on his client's behalf. The Court sought to allay defendant's fears by informing him that it was the responsibility of the Court to ascertain the law on duress, even if counsel failed to do so. In view of the totality of the circumstances and the extreme tardiness of the request, the Court denied it.

■ It is axiomatic that the granting of a continuance lies within the sound discretion of the trial judge and will be reversed only upon a showing of a clear abuse of discretion. *Avery v. Alabama*, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940); *United States v. Harris*, 501 F.2d 1 (9th Cir. 1974); *Daut v. United States*, 405 F.2d 312 (9th Cir. 1968), *cert. denied*, 402 U.S. 945, 91 S.Ct. 1624, 29 L.Ed.2d 114 (1971); *Torres v. United States*, 270 F.2d 252 (9th Cir. 1959), *cert. denied*, 362 U.S. 921, 80 S.Ct. 675, 4 L.Ed.2d 741 (1960). This Court has recently reiterated its adherence to the rule that a trial court properly acts within its discretion when it refuses to allow the substitution of counsel on the eve of trial. *United States v. Harris, supra; United States v. Price*, 474 F.2d 1223 (9th Cir. 1973); *Good v. United States*, 378 F.2d 934 (9th Cir. 1967); *cf. Brown v. Craven*, 424 F.2d 1166 (9th Cir. 1970). In view of the trial court's thoughtful and careful consideration of defendant's tardy request and the circumstances here presented, there has been no showing of an abuse of discretion. To the contrary, in light of the circumstances, the Court appears to have acted in a fair and just manner, and it did not err in refusing defendant's request.

We affirm.