967 F.2d 593
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Timothy Herbert FRAZIER, Defendant-Appellant.
 91-50310.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 6, 1992.*
Decided June 22, 1992.
As Corrected July 1, 1992.
 
 Before BOOCHEVER, WILLIAM A. NORRIS and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Timothy Herbert Frazier appeals his conviction and sentence for being an inmate of a federal prison in possession of a knife in violation of 18 U.S.C. § 1791(a)(2). We affirm his conviction but vacate his sentence and remand for resentencing.
 
 FACTS
 
 3
 On June 20, 1988, Timothy Herbert Frazier was a prisoner at the United States Penitentiary at Lompoc, serving a 20 year sentence for armed bank robbery. At 2:50 p.m. that afternoon, Frazier walked from his prison job to the prison hospital for one of his regular medical appointments. Along the way, Frazier was required to undergo a search by prison officers. A hand-held metal detector, employed by prison officer Richard Chermak, was activated as it ran across Frazier's shoes. Frazier was asked to remove his left shoe. He was evasive, removing first one shoe liner and then another. Frazier was asked a third time to remove his shoe. He refused. Frazier was ordered to lift his left foot and Chermak removed Frazier's shoe. Chermak discovered in the sole of Frazier's shoe an eleven inch knife, fashioned from a large serving spoon. The spoon had been sharpened to a point and its handle had been broken off. A black string had been tied to the handle, as a lanyard. Frazier was then hancuffed and led to the duty lieutenant's office.
 
 
 4
 On June 23, 1988, Frazier waived his Miranda rights and was interrogated by FBI Special Agent Daniel Payne. Frazier told Payne that one of his friends--a "homeboy", in Frazier's language--was in trouble with a group of other prisoners, who suspected that Frazier's friend had stolen some of their possessions. Frazier was asked by his friend to watch his cell, for fear that it might be trashed or burned. In fact, the cell was burned, and both Frazier's friend and his threateners were sent to the segregation unit because of the incident. The threateners then turned their ire on Frazier, threatening him through intermediaries with various kinds of injury.
 
 
 5
 The bad blood continued. While watching television in a common area, Frazier was confronted by one of his friend's threateners, Willie "Green Eyes" Jackson. Jackson changed the channel and got into an argument with Frazier. Frazier returned to his cell; Jackson followed; a fight ensued. According to Frazier, Jackson swung first, but missed. Frazier struck second, and felled Jackson, who retreated but threatened to "get" Frazier. In fear because of these incidents, Frazier decided that he was "going to have to get the problem straightened out before it got out of hand".
 
 
 6
 Two days later, according to Frazier's statement to Payne, Frazier benefited from a convenient serendipity: while working at his prison job in the electronic cable shop, Frazier says he discovered a knife taped to the bottom of a press-type machine in the cable shop. He hid it in his shoe, hoping to use it as protection from those threatening him. According to Frazier, the knife was discovered by Chermak only a few hours after he had found and appropriated it.
 
 
 7
 On October 19, 1991, a federal grand jury returned an indictment charging Frazier with one count of being an inmate in possession of "an object designed or intended to be used as a weapon, namely, a sharpened metal serving spoon handle", in violation of 18 U.S.C. § 1791(a)(2). On January 3, 1991, the government filed a motion in limine seeking to preclude Frazier's use of a duress defense. After hearing arguments and considering certain materials in camera, the district court granted the government's motion. On February 15, 1991, Frazier entered a conditional guilty plea to the one-count indictment, reserving his right to appeal the district court's ruling precluding a duress defense. On May 20, 1991, Frazier was sentenced as a career offender under the Guidelines to 51 months in custody, consecutive to the sentence he was then serving, to be followed by three years of supervised release. This timely appeal followed.
 
 ANALYSIS
 
 8
 (I)
 
 
 9
 Frazier argues that the district court wrongly excluded a defense of duress to the charge of illegal possession of a weapon. The legal sufficiency of a proffered defense is a question of law and is therefore reviewed de novo. United States v. Charmley, 764 F.2d 675, 676 (9th Cir.1985).
 
 
 10
 It is well-established in federal common law that there are three elements to a duress defense:
 
 
 11
 (1) an immediate threat of death or bodily injury, (2) a well-grounded fear that the threat will be carried out, (3) no reasonable opportunity to escape the threatened harm.
 
 
 12
 United States v. Contento-Pachon, 723 F.2d 691, 693 (9th Cir.1984). A defendant must make a threshold showing as to each element of the defense: if the "testimony supporting one element is insufficient to sustain [an affirmative] defense even if believed, the trial court and jury need not be burdened with testimony supporting other elements of the defense." United States v. Bailey, 444 U.S. 394, 416 (1980).
 
 
 13
 Frazier's case is squarely governed by United States v. Wood, 566 F.2d 1108 (9th Cir.1977). Like Frazier, Wood was an inmate at Lompoc who was convicted of possessing a knife in prison. Wood claimed that he possessed the knife to protect himself from other inmates who had threatened him. Wood was denied a duress defense because he had made no effort to alert the authorities of his plight. The Wood court held that "transfer out of prison or into protective custody within the prison" provided reasonable but untried opportunities for Wood to escape his troubles. Id. at 1109. The court noted that to hold otherwise "would have the effect of giving an inmate like Wood a license to carry a knife within the prison." Id.
 
 
 14
 Frazier fails to distinguish his case from Wood's. Even if one accepts all of Frazier's proof that Lompoc's administrative detention is unsafe, Frazier offers nothing to explain why a transfer out of Lompoc would have failed to solve his troubles. Wood specifically held that a "transfer out of the prison" constituted a reasonable opportunity to escape within the meaning of a duress defense. Like Wood, Frazier never sought a transfer. It cannot be said that Frazier was ignorant of the possibility; he had been transferred to Lompoc from a federal prison in Indiana after a fight there.
 
 
 15
 Failing to pursue a transfer from Lompoc but persisting in a duress defense, Frazier is really seeking the same "license to carry a knife within the prison" that was denied Wood. But the requirement that those claiming duress or necessity must seek all reasonable opportunities to escape is firmly fixed in federal common law. "Under any definition of these defenses, one principle remains constant: if there was a reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm', the defense will fail." Bailey, 444 U.S. at 410 (quoting Lafave and Scott, Handbook on Criminal Law 379 (1972)).
 
 
 16
 A defendant's duty to pursue all reasonable, legal alternatives to a criminal act must be enforced with an especial vigor in the volatile context of prisons. Before a prisoner justifiably may turn to the self-help of homemade weapons, there must be proof that he contacted prison authorities about his troubles; was rebuffed or ignored; and so was truly alone in his struggle. See United States v. Michelson, 559 F.2d 567, 570 (9th Cir.1977) (acknowledging but not defining those "few and very limited circumstances", where an inmate who could not secure protection from prison officials might justifiably be forced to choose "fight or flight"). Anything less would give men like Frazier an excuse to travel armed through prison life. The district court made no error in prohibiting Frazier's duress defense from going to trial.
 
 
 17
 One puzzle remains. Frazier characterizes his defense as one of "duress". By its silence, the government appears to acquiesce in this characterization. This is odd. A duress defense works as an excuse for doing the (criminal) bidding of another: one usually claims that he was forced to commit a criminal act to further the coercer's own criminal designs. See e.g. United States v. Johnson, 956 F.2d 894 (9th Cir.1992) (claim of being forced to sell drugs for a kingpin); Contento-Pachon, 723 F.2d at 693 (forced to transport drugs for drug cartel). A basic element of duress is that one has been coerced to act for someone else's reasons. See Model Penal Code § 2.09, comment 3 ("The typical situation [of duress] is one in which the actor is told that unless he performs a particular criminal act a threatened harm will occur and he yields to the pressure of the threat, performing the forbidden act"). Frazier's threateners did not force him to carry a knife. His possession of the knife thwarted, not furthered, their criminal purposes. Properly characterized, Frazier is making a claim of self-defense. This court cannot participate in Frazier's mischaracterization. See Contento-Pachon 723 F.2d at 695 (noting that Contento-Pachon had "mischaracterized evidence of duress as evidence of necessity" and refusing to accept that mischaracterization). Those like Frazier who believe they must defend themselves face a desperate choice; but not all desperate choices are made under duress.
 
 
 18
 However, even if Frazier's defense had been properly characterized, it would also have been properly denied. The controlling case is United States v. Lemon, 824 F.2d 763 (9th Cir.1987), which upheld a district court's denial of a self-defense jury instruction for a charge of violating the felon in possession of a weapon statute. In order to establish a defense of self-defense to an illegal possession of a weapon charge, a defendant must demonstrate that:
 
 
 19
 (1) he was under unlawful and present threat of death or serious bodily injury; (2) he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) he had no reasonable legal alternative; and (4) there was a direct causal relationship between the criminal action and the avoidance of the threatened harm.
 
 
 20
 Id. at 765 (emphasis added). The Lemon court went on to hold that to establish the absence of "reasonable, legal alternatives" to the illegal possession of a weapon, a defendant "must show that he actually tried the alternative or had no time to try it, or that a history of futile attempts revealed the illusionary benefits of the alternatives." d. (quoting United States v. Harper, 802 F.2d 115, 118 (5th Cir.1986)). Frazier cannot show that he "actually tried" seeking a transfer from Lompoc, or that he "had no time to try it", or that he had a "history of futile attempts" at getting such a transfer. However his defense is characterized, it was properly denied. Frazier's conviction is affirmed.
 
 
 21
 (II)
 
 
 22
 After Frazier's conviction, the district court found his crime was a felony constituting a "crime of violence", thereby laying the basis for application of the "career offender" provision of the Sentencing Guidelines. See U.S.S.G. § 4B1.1. Under that provision, a defendant is a career offender, and his sentence is to be enhanced, if he was at least 18 at the time of the instant offense; the instant offense is a felony that is either a crime of violence or a controlled substance offense; and he has at least two prior felony convictions of the same kind. Id.
 
 
 23
 Frazier appeals his sentence, claiming that possession of a knife is not a crime of violence within the meaning of the career offender provision and that he does not have two prior felony convictions.
 
 
 24
 In arguing that the illegal possession of a knife is a crime of violence, the government relies on United States v. O'Neal, 937 F.2d 1369, 1375 (9th Cir.1990), which held that under the definition of the phrase "crime of violence" in 18 U.S.C. § 16, which the Guidelines originally adopted as its own, possession of a firearm by a felon should be treated as a crime of violence under the Guidelines. However, a 1989 amendment to section 4B1.2 of the Guidelines deleted reference to 18 U.S.C. § 16 and redefined the phrase "crime of violence". See U.S.S.G.App. C (amendment 268). A subsequent amendment to the Application Notes of section 4B1.2 specifically says that the "term 'crime of violence' does not include the offense of unlawful possession of a firearm by a felon". In light of these two amendments, O'Neal has been supplanted. United States v. Sahakian, No. 91-10199, slip op. 5975 (9th Cir., filed May 26, 1992). The unlawful possession of a firearm is not a crime of violence.
 
 
 25
 If possession of a firearm is not a crime of violence within the meaning of the Guidelines, it follows a fortiori that possession of a knife is not a crime of violence. Frazier was wrongly sentenced as a career offender, and his sentence must be vacated and remanded for resentencing.
 
 
 26
 In attacking his sentence under the career offender provision, Frazier also argues that his prior convictions were "related cases" within the Guideline's broad meaning of that phrase. See § 4A1.2(2). The district court found that Frazier's prior convictions were not related cases. The court's finding had two distinct legal consequences: it rendered Frazier liable to an enhanced sentence under the career offender provision and it raised his criminal history score. The first consequence is obviated by our holding that Frazier was not convicted of a crime of violence. But that holding does not affect Frazier's criminal history score. Unless we consider Frazier's argument that his prior convictions are related cases within the meaning of the Guidelines, his criminal history score will again be calculated as if they were not related. Frazier's resentencing requires an authoritative answer to whether his prior convictions are related cases. Because the issue has been properly raised and fully briefed, we address its merits.
 
 
 27
 Frazier argues that his prior convictions are related cases because they "were part of a single common scheme or plan". § 4A1.2 (Application Note 3). In calculating a defendant's criminal history score, related cases are to be counted as one sentence. See § 4A1.2(a)(2). If Frazier's three prior convictions are related cases, his criminal history score would be reduced by six points. Under the standard announced in United States v. Houser, 929 F.2d 1385 (9th Cir.1991), a defendant's prior convictions are "part of a single scheme or plan" if the crimes were of a similar nature, occurred within a short period of time, were the result of a single investigation, and most importantly, "had been charged separately only because they had occurred in different jurisdictions". United States v. Chapnick, No. 91-50194, slip op. 4835 at 4841 n. 3 (9th Cir. filed April 29, 1992); United States v. Davis, 922 F.2d 1385, 1389-90 (9th Cir.1991); Houser, 929 F.2d at 1374.
 
 
 28
 First, it is obvious that Frazier's crimes, all bank robberies to support his drug habit, were "similar in nature". Second, all of the bank robberies occurred within three months of each other; this is a "short period of time". See Houser, 929 F.2d at 1373-74 (six weeks is a short period of time). Third, there is undisputed evidence that Frazier's convictions were the result of a consolidated investigation by state and federal authorities. Finally, and most importantly, Frazier both submitted evidence and made an offer of proof--the truth of which was not controverted by either the government or the district court--that the only reason he was charged by both state and federal authorities for the bank robberies was for jurisdictional reasons. It appears that had Frazier been an adult at the time of his earlier crimes, and had those crimes not been committed in two different federal jurisdictions, the federal government would have charged (and presumably convicted) Frazier of all the bank robberies in one trial. The federal government's kindness to Frazier as a juvenile should not be made to hurt him as an adult. Frazier's past convictions for bank robbery are related cases and may only be counted as one sentence in calculating his criminal history score.
 
 
 29
 Frazier's conviction is AFFIRMED; his sentence is VACATED and the case is REMANDED for resentencing.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Fed.R.App.P. 34(a) and Ninth Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3